David E. CORBETT, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 02S00–0004–CR–260.

Supreme Court of Indiana.

March 19, 2002.

Timothy E. Stucky, Blume, Connelly, Jordan & Stucky, Fort Wayne, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, David E. Corbett, was convicted of murder [1] and robbery [2] for the incidents surrounding the slaying of Edwin Massengill on April 20, 1999 in Fort Wayne, Indiana.[3] The trial court sentenced the defendant to eighty-five years imprisonment. In his appeal, the defendant asserts five grounds: (1) insufficient evidence; (2) erroneous admission of autopsy photographs; (3) improper transferred intent jury instruction; (4) errors in findings of aggravating and mitigating circumstances; and (5) manifestly unreasonable sentence. We affirm the defendant's convictions and sentence.

## Sufficiency of the Evidence

The defendant claims the evidence introduced at trial was insufficient to support his convictions. Specifically, although he admits that he fatally struck Massengill with a sledgehammer and took the victim's wallet and handgun, the defendant claims that the State failed to prove the element of intent as to each of the charged offenses. The defendant contends that the only evidence on this issue came from a witness, Joseph Davis, whose testimony was incredibly dubious.

In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Marcum v. State,* 725 N.E.2d 852, 863 (Ind.2000). Under the "incredible dubiosity" rule, however, a reviewing court may impinge on the fact-finder's responsibility to judge witness credibility when "a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence" of the defendant's guilt. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind. 1994); *accord Lee v. State,* 735 N.E.2d 1169, 1173 (Ind.2000); *White v. State,* 706 N.E.2d 1078, 1079–80 (Ind.1999).

Davis's testimony does not fit into the incredible dubiosity rule. While inconsistencies exist between witness Davis's statement to police and his trial testimony, they do not render his testimony inherently contradictory as a result of coercion. Further, the convictions were not based solely on Davis's testimony. The defendant admitted to police that he and Davis had gone to the victim's home and that, when the victim and Davis ignored the defendant's demand that they stop arguing, he threw a hammer, intending to hit Davis but striking Massengill instead. In addition, the pathologist testified that the victim was probably struck three times in the head. The jury could have easily inferred that striking a man in the head three times with a sledgehammer was intentional and not accidental. Sufficient evidence was presented to establish the element of intent for the defendant's convictions of murder and robbery.

## Autopsy Photographs

The defendant challenges the admission of 26 photographs taken immediately before, during and after the autop-

---

1. Ind.Code § 35–42–1–1.

2. Ind.Code § 35–42–5–1.

3. The defendant was also convicted of felony murder and theft, but these two convictions were merged into the murder and robbery convictions respectively at sentencing.

sy performed on the decedent, Edwin Massengill. We recently stated the standard of review for admission of photographic evidence:

> Because the admission and exclusion of evidence falls within the sound discretion of the trial court, this Court reviews the admission of photographic evidence only for abuse of discretion. *Byers v. State,* 709 N.E.2d 1024, 1028 (Ind.1999); *Amburgey v. State,* 696 N.E.2d 44, 45 (Ind.1998). Relevant evidence, including photographs, may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice. Ind.Evidence Rule 403; *Byers,* 709 N.E.2d at 1028. "Even gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally." *Amburgey,* 696 N.E.2d at 45; *see also Byers,* 709 N.E.2d at 1028. Photographs, even those gruesome in nature, are admissible if they act as interpretative aids for the jury and have strong probative value. *Spencer v. State,* 703 N.E.2d 1053, 1057 (Ind.1999); *Robinson v. State,* 693 N.E.2d 548, 553 (Ind.1998).

*Swingley v. State,* 739 N.E.2d 132, 133 (Ind.2000). Autopsy photos often present a unique problem because the pathologist has manipulated the corpse in some way during the autopsy. Autopsy photographs are generally inadmissible if they show the body in an altered condition. *Allen v. State,* 686 N.E.2d 760, 776 (Ind.1997), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667 (1999). But *Swingley* recognizes that "there are situations where some alteration of the body is necessary to demonstrate the testimony being given." 739 N.E.2d at 133–34. In *Fentress v. State,* 702 N.E.2d 721 (Ind.1998), a case similar to the one before us today, we held admissible two photographs that depicted the victim's skull with the hair and skin pulled away from it. Because the pathologist had explained what he had done and the alteration was necessary to determine the extent of the victim's injuries, we found that the "potential for confusion [was] minimal" and that the probative value outweighed the prejudicial effect. *Fentress,* 702 N.E.2d at 722.

In this case, eleven of the photographs depict the body before the autopsy (Exhibits 42–48, 49–50, 66–67). Two additional photographs show one of the head wounds cleaned and with some hair shaved away. The admission of these photographs was not error. *See Loy v. State,* 436 N.E.2d 1125, 1128 (Ind.1982) (holding photographs that depict victim in natural state after death admissible). In fact, these photographs are fairly tame for a murder case. The rest of the challenged photographs depict various stages of the autopsy.

Exhibits 51, 52, and 53 depict the victim's head with the skin and hair pulled back from the skull. The pathologist stated this was necessary to determine the extent of the injuries, and he explained the procedure he undertook. These photographs are akin to the ones in *Fentress.* Two of the photographs, however, Exhibits 51 and 52, are problematic. In addition to depicting the victim's head and wounds, these pictures show the hollow shell of the victim's body, which greatly and unnecessarily enhances the gruesomeness of the pictures. These two photographs, although relevant to the cause of death and the disputed issue of the number of blows, were so prejudicial that the trial court abused its discretion in allowing them to be admitted.

Exhibit 54, a close-up of the victim's head, shows part of the brain exposed. The pathologist explained the photo shows the effects of external blunt force trauma. Record at 620–21. Exhibit 55 depicts a

fracture in a portion of the skull, which has been removed from the victim's head. The pathologist explained how he removed this portion and highlighted the fracture to the jury. Record at 621–23. It was not error to admit these two exhibits. It was error, however, to admit Exhibit 56 because, although the portion of the skull depicted in Exhibit 55 is in the foreground, the photograph focuses on the hollow shell of the victim's body. The probative value of Exhibit 56 is outweighed by its unfair prejudicial effect.

Exhibits 57 and 58 depict the base of the skull with the brain removed. As the pathologist explained the alteration he had made and the need to show the extent of the victim's injuries, the trial court did not err in allowing the admission of these photographs. The same is true of Exhibit 59, which depicts a portion of the skull against the edge of a table to show how a hard surface could produce the fracture. The pathologist also testified that Exhibit 11, a sledgehammer (the alleged murder weapon), could have caused the fractures pictured in Exhibit 59. Record at 632–33.

Exhibits 60, 61 and 63 depict the victim's brain removed from his skull. While these pictures do indicate trauma to the brain consistent with an external blunt force trauma, the photographs are cumulative and their prejudicial effect outweighs their probative value. It was error to allow them to be admitted. In the same way, Exhibits 64 and 65 should have been excluded. These photographs depict the hollow shell of the victim and focus on his ribs. The probative value of these pictures was slight as the existence of broken ribs was not a material issue and their unfair prejudicial effect is high given their gruesomeness. It was error not to exclude these exhibits.

Finding that the trial court erred in admitting some photographs is not enough to warrant reversal, however. Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. Ind.Trial Rule 61; *Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995). To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury. *Alva v. State*, 605 N.E.2d 169, 171 (Ind.1993).

The defendant does not demonstrate how the erroneous admission of some of the photographs affected his substantial rights. Under the defendant's version of events, he threw the hammer at another man, Davis, and accidentally struck Massengill in the head. After attempting to render first aid, the defendant states he panicked and took the victim's wallet and a handgun. The only evidence that corroborates the defendant's story is that a pillow was found under the victim, a bottle of hydrogen peroxide was found near his head, and blood had been wiped from under the victim's nose. It is undisputed that the defendant took the hammer with him and was in possession of two rifles, which he claimed Davis took. The pathologist wrote in his report and testified at trial that the victim suffered more than one and probably three blows to the head. We find it highly improbable that the six erroneously admitted photographs influenced the jury from believing the defendant's highly improbable version of events. The probable impact of the erroneous admission of the photographs did not affect the defendant's substantial rights, and the error in admitting the exhibit must be disregarded as harmless.

### Transferred Intent Instruction

The defendant next contends that the trial court erred in giving the jury an instruction on transferred intent. Over

objection, the trial court gave the State's tendered instruction on the doctrine of transferred intent:

> If one intends to injure or kill a person with a deadly weapon, and by mistake or inadvertence injures or kills another person with such weapon, his intent is transferred from the person to whom it was directed to the person actually injured, and he may be found guilty of murder of the person who was killed.

> You may find a person guilty of murder of a person who was killed, even if you find that person intended to kill another.

Record at 159. The defendant contends the trial court erred in giving this instruction because it was contrary to the State's theory, which asserted that Davis was not in the house when Massengill was killed, and because it created an improper mandatory presumption that the defendant acted with the specific intent to kill Davis.

█ In reviewing a trial court's decision to give or refuse tendered jury instructions, the Court considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Cutter v. State,* 725 N.E.2d 401, 408 (Ind.2000); *Wooley v. State,* 716 N.E.2d 919, 926 (Ind. 1999).

█ An instruction may deviate from the State's theory of the case as long as it is supported by the evidence and is a correct statement of law. *See Hoskins v. State,* 441 N.E.2d 419, 424–25 (Ind.1982).

The contested instruction was supported by evidence that the defendant intended to kill Davis rather than the victim. The defendant stated that he threw a handheld sledgehammer at Davis. The jury was instructed, "[t]he intent to kill can be found from the acts, declarations, and conduct of the Defendant at or just immediately before the commission of the offense and/or from the nature of the weapon used." Record at 158. This instruction is a correct statement of the law in Indiana. *See Barany v. State,* 658 N.E.2d 60, 65 (Ind.1995). From the defendant's declaration that he threw a sledgehammer at Davis, the jury could infer that the defendant intended to kill Davis. The challenged instruction was supported by the evidence.

The defendant also claims the instruction creates an improper mandatory presumption that the defendant acted with the specific intent to kill. By the language of the instruction, the jury was essentially told that if the defendant, acting with the intent to kill Davis, accidentally killed Massengill; the defendant *may* be found guilty of the murder of Massengill. This is not a mandatory instruction. It permitted, but did not require, the jury to find guilt.

█ In addition, the defendant contends that the giving of the challenged transferred intent instruction essentially alleged that the defendant had attempted to murder Davis, and that the trial court was thus required to instruct the jury on the specific intent for the offense of attempted murder. The defendant did not tender any proposed instructions addressing this issue. Record at 101–111. Nor did he object on this basis at trial.[4] "No

4. Following the presentation of evidence and before final arguments, the trial court and counsel reviewed the trial court's intended instructions, one by one. Record at 822–48.

Our review of this colloquy discloses no objection or argument by the defense on this issue. We note, however, that at one point, when the defense stated that, "for purposes of the rec-

party may claim as error the giving of an instruction unless he objects thereto ... stating distinctly the matter to which he objects and the grounds of his objection." Ind.Trial Rule 51(C). When objecting at trial to the *giving* of an instruction, a party is not required to tender an alternative instruction if the party's objection is sufficiently clear and specific to inform the trial court of the claimed error and to prevent inadvertent error. *Mitchell v. State*, 742 N.E.2d 953, 955 (Ind.2001). If a party is objecting to the *failure to give* an instruction, however, a tendered instruction *is* necessary. *Id.*

Not only is the defendant precluded from claiming on appeal that the trial court should have given an instruction regarding specific intent for attempted murder, but this claim does not qualify as fundamental error authorizing review of this claim despite the defendant's failure to establish that he properly raised the issue at trial.

### Aggravating and Mitigating Circumstances

 The defendant contends that the trial court erred in failing to find mitigating circumstances and in finding the defendant's minimal criminal history as a significant aggravating circumstance. The trial court sentenced the defendant to sixty-five years for his murder conviction and twenty years for his robbery conviction, and ordered the sentences to be served consecutively.

 Sentencing decisions generally rest within the discretion of the trial court, and are reviewed on appeal only for an abuse of discretion. *Monegan v. State*,

756 N.E.2d 499, 501 (Ind.2001). It is within the trial court's discretion to determine whether a presumptive sentence will be enhanced due to aggravating factors. *Id.* Because reasonable minds may differ due to the subjectivity of the sentencing process, it is generally inappropriate for us to merely substitute our opinions for those of the trial judge. *Hurt v. State*, 657 N.E.2d 112, 114 (Ind.1995).

The defendant argues that the trial court erroneously found no mitigating factors, notwithstanding evidence of the defendant's cooperation with law enforcement by providing an incriminating voluntary statement, his acceptance of responsibility for his admitted criminal conduct, his attempt to render aid to the victim immediately after the fatal blows, his genuine remorse for his conduct, and his untreated substance abuse problem. The trial court's written sentencing order states, "Court finds that there are no mitigating circumstances." Record at 176.

 Determining mitigating circumstances is within the discretion of the trial court. *Walter v. State*, 727 N.E.2d 443, 448 (Ind.2000); *Legue v. State*, 688 N.E.2d 408, 411 (Ind.1997). A trial court need not regard or weigh a possible mitigating circumstance the same as urged by the defendant. *Monegan*, 756 N.E.2d at 504. When a defendant alleges that the trial court failed to identify or find a mitigating circumstance, the defendant must establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999). The trial court is not

---

ord," it "oppose[s] any instruction on the transferred intent," the trial court responded: "Oh, I understand that. And we'll give you time.... I guess we're going through these now as a practical matter. What I'll do is after we're done with closings, we'll let you

make specific verbatim objections to each instruction." Record at 841. The defendant does not cite, nor do we find, any point in the record showing that further specific objections were made.

required to make an affirmative finding expressly negating each potentially mitigating circumstance. *Stout v. State,* 528 N.E.2d 476 (Ind.1988); *see also Walter,* 727 N.E.2d at 448; *Legue,* 688 N.E.2d at 411. The failure to find mitigating circumstances that are clearly supported by the record, however, may imply that they were overlooked and not properly considered. *Jones v. State,* 467 N.E.2d 681, 683 (Ind. 1984). In reviewing a sentencing decision in a non-capital case, we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings. *Walter,* 727 N.E.2d at 449.

In this case the trial court's oral remarks at the conclusion of the sentencing hearing demonstrate that, although concluding that none of the things presented by the defense constitute mitigating circumstances, the court discussed each of the proposed mitigating circumstances. Record at 201–02. The court noted that the defendant's "substance abuse may in fact be a reason for committing the crime and it's not an excuse." Record at 201. As to his claim of cooperation with law enforcement, after noting that the defendant told the police an untruthful story, the trial court stated, "I just don't think that there's any indication that he cooperated with the police in any way." Record at 202. Likewise, the trial court observed, "There's been no acceptance of responsibility" but rather a significant effort "to minimize your responsibility." *Id.* The trial court did not expressly discuss the defendant's assertion that mitigating consideration should have been given for his care for the victim immediately after striking the fatal blow. We find, however, that the defendant's momentary aid, including the

possible placement of a pillow under the victim's head and possible use of hydrogen peroxide, but then rummaging through the house and removing the victim's wallet and several weapons, does not clearly constitute a significant mitigating circumstance. We find no error as to defendant's claim that the trial court failed to find and consider mitigating circumstances.

 The defendant contends that the trial court erred "in placing significant weight on the Defendant's minimal, remote, and nonviolent criminal history." Br. of Appellant at 27. "Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Wooley v. State,* 716 N.E.2d 919, 929 n. 4 (Ind.1999). In *Wooley,* we held that "a criminal history comprised of a single, nonviolent misdemeanor is not a significant aggravator in the context of a sentence for murder." *Id.* at 929. The chronological remoteness of a defendant's prior criminal history should be taken into account. *Harris v. State,* 272 Ind. 210, 396 N.E.2d 674, 677 (1979). However, "we will not say that remoteness in time, to whatever degree, renders a prior conviction irrelevant." *Id.* The remoteness of prior criminal history does not preclude the trial court from considering it as an aggravating circumstance. *Bowling v. State,* 493 N.E.2d 783 (Ind.1986) (citing *Perry v. State,* 447 N.E.2d 599, 600 (Ind. 1983)).

The defendant was previously convicted of burglary in Arkansas in 1986 and grand theft in Idaho in 1983.[5] These past felony convictions rise to the level of a significant aggravator in this case where the crimes are murder and robbery. The trial court did not error when it found the defendant's

---

5. The State also highlights the defendant's conviction for misdemeanor driving under the influence in 1996.

criminal history to be a significant aggravating factor.

We conclude that the trial court thoughtfully exercised its discretion in ordering that both presumptive sentences be enhanced and be served consecutively.

## Manifestly Unreasonable Sentence

The defendant also claims the trial court's imposed sentence was manifestly unreasonable, as it was the maximum sentence permitted by law.

Article 7, § 4 of the Indiana Constitution authorizes the review and revision of criminal sentences imposed. This authority is implemented through Indiana Appellate Rule 7(B), which provides: "The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender."

Here, the defendant smashed Edwin Massengill's skull with repeated blows of a sledgehammer. As Massengill lay dying, the defendant rummaged through the house stealing a handgun, two rifles, and the victim's wallet. The defendant has prior convictions of burglary and grand theft. Given the nature of the offense and the character of this offender, the sentence is not manifestly unreasonable.

## Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.