**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 23 2013, 5:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DJOMON N. TITO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-315 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah F. Pierson-Treacy, Judge
Cause No. 49F19-1210-CM-68987

**December 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Djomon N. Tito ("Tito") appeals his conviction, following a bench trial, for battery[1] as a Class B misdemeanor. Tito presents one issue for review, namely, whether the trial court abused its discretion in admitting certain evidence.

We affirm.

## FACTS AND PROCEDURAL HISTORY

During the early morning hours of July 18, 2012, Courtney Tarter ("Tarter") went into an Indianapolis gas station to buy a cup of coffee on her way to work. A man, who was later identified as Tito, exited the glass cashier's booth and watched Tarter. As Tarter approached the booth to pay for her coffee, Tito "came up on [Tarter] and grabbed [her] behind and said 'that's nice.'" *Tr*. at 9, 14. Tarter left the store and went to work. Later that day, after speaking with coworkers about how to report the incident, Tarter called the police to report the incident. Officer Thomas Goodwin, of the Indianapolis Metropolitan Police Department ("IMPD") took Tarter's incident report.

IMPD Detective Tanya Terry ("Detective Terry") was placed in charge of the investigation, which was delayed somewhat due to conflicts between Tarter's and Detective Terry's work schedules. When the two finally connected, Tarter recalled her version of the events. Detective Terry went to the gas station, spoke with the manager, and, based on their conversation, Detective Terry concluded that Tito was the clerk on duty on the morning in question. Detective Terry left her "contact information" with the manager, but made no contact with Tito. *Id*. at 24. However, upon returning to her office,

---

[1] *See* Ind. Code § 35-42-2-1.

Detective Terry had a voicemail from Tito. "He said that he was calling to tell [Detective Terry] that he didn't harass that girl. He said that he just gave her a hug, and she had hot coffee in her hand."[2] *Id.* at 25.

Detective Terry prepared a photo array and included Tito as one of the six men. On August 13, 2012, Detective Terry showed Tarter the array, and Tarter "identified [] Tito as the person that grabbed her butt on July 18th." *Id.* Detective Terry asked Tarter to sign her name and the date under the photo of the person that grabbed her at the gas station, and Tarter signed under Tito's photo. The State charged Tito with battery as a Class B misdemeanor.

During the bench trial, Tarter described the person who touched her on the morning in question as being about six feet six inches tall with fairly dark skin. *Id.* at 12. She also testified that "[h]is English wasn't that good." *Id.* at 14. When asked if she could recognize the person who touched her that morning as being in the courtroom, Tarter said, "Yes," and pointed to Tito. *Id.* at 13. Tarter testified that when Tito touched her it made her feel "violated," "uncomfortable and unsafe." *Id.* at 32.

Also during the trial, Detective Terry testified that she met with the manager of the gas station and asked him who was working on the morning in question. When Detective Terry attempted to testify as to what the gas station manager told her, Tito objected on hearsay grounds, and the objection was sustained. *Id.* at 21. Later, however, and over Tito's objection, Detective Terry named Tito as the person she believed was working that

---

[2] Tito made a second call to Detective Terry. During that call, Tito said that he "didn't remember the lady." *Tr.* at 27. "He told Detective Terry "that he was thinking of a different lady, and that lady never made a police report." *Id.*

3

morning. Detective Terry supplied Tito's name in response to the State's question as to whether her conversation with the manager had led her to any conclusions about who was working on the morning in question.

Tito testified on his own behalf. During his testimony he said that he was from Chad and spoke French, but that during his telephone calls with Detective Terry he had spoken English. Tito admitted that, at six feet eight inches tall, he was the tallest employee at the gas station—saying "the other employees may reach to my shoulder." *Id.* at 43. He said that he called Detective Terry because the gas station manager told him to call because "a lady" "had complained about him." *Id.* at 45. Tito testified that he thought the complaint came from "a lady going to Ohio" because she "pretended to look upset that . . . [Tito] touch[ed] her buttocks by hugging her." *Id.* at 46.

In finding Tito guilty, the trial court made the following statements:

Defendant admit[ted] to be able to speak English so when the victim said that the defendant said "that's nice" in English, that is plausible. That the defendant said that the other coworkers were much shorter than he is. And that the victim identified the defendant in the photo array accurately and in court. And a reasonable inference why the defendant did call police is because he was working that . . . morning. I find the State has proven beyond a reasonable doubt that the defendant committed a B Misdemeanor Battery.

*Id*. at 50. Tito was sentenced to ninety days with all but time served suspended. Tito now appeals.

**DISCUSSION AND DECISION**

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012) (citing *Wilson v. State*, 765 N.E.2d 1265,

4

1272 (Ind. 2002)). "An abuse of discretion occurs 'where the decision is clearly against the logic and effect of the facts and circumstances.'" *Id*. (quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)). Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Combs v. State*, 895 N.E.2d 1252, 1255 (Ind. Ct. App. 2008), *trans. denied*.

Tito contends that the trial court abused its discretion in admitting, over Tito's objection, Detective Terry's conclusion that Tito was the clerk working at the gas station on the morning in question. He contends that Detective Terry's "opinion" was "hearsay disguised as 'course of investigation' testimony," because the evidence had "no relevance apart from proving the fact asserted in the statement," *i.e.*, that Tito was working when the incident occurred. *Appellant's Br*. at 4.

Assuming without deciding that the trial court abused its discretion when it admitted Detective Terry's testimony that Tito was working on the morning in question, we conclude that the error was harmless and does not warrant reversal. "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Corbett v. State*, 764 N.E.2d 622, 628 (Ind. 2002). Here, Tito makes no argument, as is required for reversal, that the inclusion of this evidence affected his substantial rights. The effect on a defendant's substantial rights is assessed by considering the probable impact of the evidence upon the trier of fact. *Id*. The admission of evidence that is merely cumulative of other properly admitted evidence is harmless and does not constitute reversible error. *Bryant v. State*, 802 N.E.2d 486, 494 (Ind. Ct. App. 2004), *trans. denied*.

5

Battery as a Class B misdemeanor is defined as knowingly or intentionally touching another person in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1(a). "Evidence of touching, however slight, is sufficient to support a conviction for battery." *Ball v. State*, 945 N.E.2d 252, 258 (Ind. Ct. App. 2011), *trans. denied*. Here, the challenged testimony at most, allowed the trial judge to infer that the gas station manager told Detective Terry that Tito was the clerk on duty at the gas station at the time of the crime. The issue at trial was the identity of the person who committed the battery. There was substantial other evidence presented on this point. Tarter identified Tito in a photo array and again in court as the gas station clerk who grabbed her on the morning in question. *Tr.* at 12-13, 25-26; *State's Ex.* 1. While Tito admitted that he worked at the gas station, he denied that he was working on the morning in question. Tarter, however, testified that the perpetrator was six feet six inches tall, *tr.* at 12, and Tito admitted that he is actually six feet eight inches tall, and that "the other employees may reach to [his] shoulder." *Id.* at 42-44. Finally, after Detective Terry spoke to the gas station manager, but before she had contacted Tito, Tito left a telephone message stating that he had not harassed but only hugged the lady who had the coffee. *Id.* at 24. The trial court explained that this was, in fact, the evidence upon which the court relied in reaching its verdict. *Id.* at 50. In light of the substantial evidence of identity, any possible error in admitting Detective Terry's statement regarding Tito being on duty on the morning in question, is harmless. Accordingly, we affirm Tito's conviction.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.