## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jan 15 2016, 8:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Chris Palmer
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | |
|---|---|
| Melvin Duarte, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | January 15, 206 <br><br> Court of Appeals Case No. 49A04-1506-CR-578 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc T. Rothenberg, Judge <br><br> The Honorable Amy J. Barbar, Magistrate <br><br> Trial Court Cause No. 49G02-1311-FA-75146 |

**Pyle, Judge.**

# Statement of the Case

Melvin Duarte ("Duarte") appeals his convictions for Class A felony attempted child molesting[1] and Class C felony child molesting.[2] Duarte argues that the trial court erred by denying his motion for a mistrial, which was based on his argument that the lack of Hispanic people on the jury venire was a violation of his Sixth Amendment right to an impartial jury. Additionally, he argues that there was insufficient evidence to support his convictions, contending that the victim's testimony was incredibly dubious. Concluding that Duarte failed to make a prima facie showing of a violation of the fair cross-section requirement and that the incredible dubiosity rule was not applicable as the victim's trial testimony was unequivocal and was corroborated by other evidence, we affirm his convictions.

Affirmed.

# Issues

1. Whether the trial court erred by denying Duarte's motion for a mistrial based upon the composition of the jury venire.

2. Whether sufficient evidence supported Duarte's convictions.

---

[1] IND. CODE §§ 35-42-4-3(a)(1); 35-41-5-1(a). We note that, effective July 1, 2014, a new version of the child molesting statute was enacted and that Class A felony attempted child molesting is now a Level 1 felony. Because Duarte committed this crime in 2009, we will refer to the statute in effect at that time.

[2] I.C. § 35-42-4-3(b). Pursuant to the 2014 version of the child molesting statute, this Class C felony child molesting offense is now a Level 4 felony.

# Facts

[3] In 2009, twenty-three-year-old Duarte was a friend of fifteen-year-old A.C. One day, Duarte was at A.C.'s house with her and her eight-year-old sister, I.G., while their parents were gone. While I.G. was sitting on the sofa and playing a video game, Duarte sat next to her and watched her play. At that time, A.C. was in the bathroom. I.G. wanted to move to the other side of the sofa to be closer to the television, and she climbed over Duarte, who was sitting in the middle of the sofa. Duarte then grabbed I.G. by her hips and made some "up and down . . . movements" with his "penis" on her "butt area" while they were both clothed. (Tr. 21, 22). I.G. felt "[u]ncomfortable" and told Duarte to stop, and she then moved to the other side of the sofa. (Tr. 22).

[4] Later that same year, Duarte was again at I.G.'s house with I.G. and her sister while their parents were gone. Duarte took I.G. for a ride on I.G.'s family's "four wheeler" vehicle and drove to some nearby train tracks. (Tr. 26). Duarte stopped at the tracks so that I.G. could drive. They switched seats so that I.G. was sitting in front and Duarte was sitting behind her. Duarte had I.G. lower her pants and underwear to below her knees and then leaned her toward the handlebars. Duarte lowered his pants and "started touching [I.G.] with his penis." (Tr. 32). Specifically, he touched I.G.'s "vagina[,]" which made her feel "[w]eird" and "[u]ncomfortable." (Tr. 32). After Duarte moved his body "back and forth[,]" I.G. told him to stop. (Tr. 33). She saw "[w]hite stuff, sperm" on his penis. (Tr. 33). Duarte wiped his penis with a tissue and then

wiped I.G.'s vagina with the same tissue. I.G. did not initially tell anyone what Duarte had done to her because she was "scared." (Tr. 23, 34).

[5] Shortly after the incident on the four-wheeled vehicle, I.G.'s mother noticed that I.G. had an unusual "brownish discharge" in her underwear. (Tr. 70). On September 18, 2009, I.G.'s mother took I.G. to the doctor, who examined I.G. and tested her for sexually transmitted diseases. The doctor diagnosed I.G. with having gonorrhea in her vagina. I.G.'s mother asked I.G. what had happened, but she did not reveal what Duarte had done.

[6] A few days later, on September 22, 2009, A.C. went to the doctor with Duarte, and he was diagnosed and treated for gonorrhea.

[7] In Fall 2013, I.G. eventually told her mother what Duarte had done to her, and I.G.'s mother reported it to the police. Thereafter, the State charged Duarte with Count I, Class A felony attempted child molesting and Counts II and III, Class C felony child molesting.

[8] The trial court held a jury trial on April 27, 2015. After the jury was selected and sworn and before the first witness testified, Duarte made an oral motion for a mistrial based upon the composition of the jury. Specifically, Duarte's attorney stated:

> It's not a Batson Challenge I don't think, [be]cause I don't think that the [S]tate has systematically tried to exclude you know any particular race or anything like that from the jury . . . but there were no Hispanics whatsoever reporting for jury duty today. And he does have a right I think under the Sixth Amendment to

some sort of a representative, jury pool as a Hispanic and there weren't any and he doesn't -- and the -- because of that he doesn't have any Hispanics on the jury either so I'm going to move for a mistrial because of that.

(Tr. 13). When the trial court asked Duarte if he had "any evidence that the procedure for getting jurors" was "biased against or exclude[d] Hispanics from the random selection" process, Duarte responded that he had no such evidence. (Tr. 13). The trial court denied Duarte's motion, noting that Marion County "follow[ed] the same process [as] the rest of the state" and that Duarte had not shown that there was a "purposeful exclusion" of Hispanics by the State. (Tr. 13).

[9] During the trial, I.G. testified to the facts surrounding the alleged molestations as stated above. I.G.'s physician testified that I.G. had been diagnosed with gonorrhea in her vagina in September 2009, which was the same time that Duarte had been diagnosed with gonorrhea. The doctor testified that gonorrhea was a "fastidious bacteria" that was transmitted through "intimate" or "sexual" contact with the oral, genital, or rectal areas. (Tr. 98). The doctor also testified, however, that it would be possible to transmit the disease without penetration by the penis of the vagina and that it could be spread by an infected male wiping ejaculate on or around a female's vagina.

[10] The jury found Duarte guilty as charged. The trial court merged Count II into Count I and entered judgment of conviction on Counts I and III. The trial court imposed a thirty (30) year sentence for Duarte's Class A felony conviction in Count I and a four (4) year sentence for his Class C felony conviction in

Count III.  The trial court ordered these sentences to be served concurrently in the Department of Correction.  Duarte now appeals.

# Decision

[11] Duarte argues that:  (1) his right to an impartial jury under the Sixth Amendment to the United States Constitution was violated because there were no Hispanic people in the venire from which to select for jury service; and (2) there was insufficient evidence to support his convictions.  We will address each argument in turn.

### 1. Composition of Jury Venire

[12] Duarte first argues that his right to an impartial jury under the Sixth Amendment to the United States Constitution was violated because there were no Hispanic people on the jury, and he asserts that the trial court should have, therefore, granted his motion for a mistrial.[3]  Stated differently, Duarte contends that his jury panel did not contain a fair cross-section of Hispanics.

[13]  "The selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial."  *Williams v. State*, 877 N.E.2d 845, 846 (Ind. Ct. App. 2007) (citing *Wilder v. State*, 813 N.E.2d 788, 791 (Ind. Ct. App. 2004) (citing *Taylor v. Louisiana*,

---

[3] In his appellate brief, Duarte makes a passing reference to the right to an impartial jury under Article I, section 13 of the Indiana Constitution, but he did not raise a state constitutional claim at trial.  Accordingly, he has waived any such argument.  *See Grace v. State*, 731 N.E.2d 442, 444 (Ind. 2000) (explaining that "any grounds not raised in the trial court are not available on appeal"), *reh'g denied.*

419 U.S. 522, 528 (1975)), *trans. denied*), *trans. denied.* "There is no requirement, however, that jury panels be a microcosm of a county or a court district. *Williams*, 877 N.E.2d at 846-47. Indeed, "[j]urors need not be mathematically proportioned to the character of the community." *Id.* at 847. "The primary concern is that juror selection not be arbitrary." *Id.*

[14] For a defendant to succeed on a challenge to a county's petit jury selection process, the defendant must first make a prima facie showing of a violation of the fair cross-section requirement. *Id.* To make such a showing, the defendant has the burden of establishing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* (quoting *Dye v. State*, 717 N.E.2d 5, 19 (Ind. 1999) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)), *reh'g denied*, *cert. denied* ). "If a defendant has made a prima facie showing of a fair cross-section violation, the State may still justify the juror selection process by showing that attainment of a fair cross-section is incompatible with a significant state interest." *Id.*

[15] Although not discussed or raised by the parties, we find that Duarte has waived appellate review of his challenge to the composition of the jury. Nothing in the record on appeal indicates that Duarte objected to the composition of the jury prior to them being sworn. Instead, the record seems to indicate that the jury

was selected and sworn without objection from Duarte until just prior to the presentation of the State's first witness. "A defendant cannot invite error and then request relief on appeal based upon that ground." *Lyles v. State*, 834 N.E.2d 1035, 1051 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*. Because the record reveals that Duarte did not object to the composition of the jury until after it had already been selected and sworn, he has waived appellate review of his challenge to the composition of the jury. *See, e.g.*, *Hise v. State*, 452 N.E.2d 913, 914 (Ind. 1983) (holding that the defendant had waived any challenge to the jury where he "specifically accepted the jury as sworn prior to moving for a mistrial").

[16] Waiver notwithstanding, Duarte's argument is without merit because he failed to show that there was a violation of the fair cross-section requirement of the Sixth Amendment. Here, at trial, Duarte specifically acknowledged that the State was not systemically excluding Hispanics or any other distinctive group and that he had no evidence that the procedure for gathering jurors was biased against or excluded Hispanics. Because Duarte cannot show that the underrepresentation of Hispanics on his jury venire was due to a systematic exclusion of such group during the jury-selection process, he has failed to show that there was a violation of the fair cross-section requirement of the Sixth Amendment. Accordingly, the trial court did not err by denying his motion for a mistrial.

## 2. Sufficiency of the Evidence

[17]   Next, Duarte argues that the evidence was insufficient to support his convictions for Class A felony attempted child molesting as contained in Count I and Class C felony child molesting as contained in Count III.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Furthermore, "[a] molested child's uncorroborated testimony is sufficient to sustain a conviction." *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001), *reh'g denied, cert. denied. See also Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."), *reh'g denied*.

[18]   To convict Duarte of Class A felony attempted child molesting as charged in Count I, the State was required to prove beyond a reasonable doubt that Duarte, who was at least twenty-one (21) years of age, attempted to perform or

submit to sexual intercourse with I.G., a child under fourteen (14) years of age, and took a substantial step toward the commission of the crime by removing I.G.'s pants and underwear and attempting to place his penis inside her vagina. *See* IND. CODE §§ 35-42-4-3(a)(1); 35-41-5-1(a).[4] To convict Duarte of Class C felony child molesting as charged in Count III, the State was required to prove beyond a reasonable doubt that Duarte performed or submitted to fondling or touching of I.G., a child under fourteen (14) years of age, with intent to arouse or satisfy the sexual desires of Duarte or I.G. *See* I.C. § 35-42-4-3(b).

[19] Duarte does not dispute that the State presented evidence supporting the elements of his two child molesting offenses. Instead, he contends that there was insufficient evidence to support his convictions because I.G.'s testimony was "inherently improbable" and "inconsistent[,]" which we interpret as an incredibly dubiosity challenge. (Duarte's Br. 10).

[20] Under the incredible dubiosity rule, appellate courts may impinge upon a trier of fact's function to judge the credibility of a witness when confronted with "inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The incredible dubiosity rule is limited to cases where a single witness presents "inherently contradictory testimony that is equivocal or coerced and

---

[4] At the time of Duarte's offense, sexual intercourse was defined as "an act that includes penetration of the female sex organ by the male sex organ." I.C. § 35-41-1-26 (now codified at I.C. § 35-31.5-2-302 (eff. July 1, 2012)).

there is a complete lack of circumstantial evidence of guilt." *Whedon v. State*, 765 N.E.2d 1276, 1278 (Ind. 2002). "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love*, 761 N.E.2d at 810.

[21] In support of Duarte's argument that I.G.'s testimony was incredibly dubious, he argues that there were inconsistencies between I.G.'s trial testimony and her statement to the police, her prior deposition testimony, and her recounting of the molestations to her mother. Any such inconsistencies, however, do not make I.G.'s testimony incredibly dubious. Indeed, inconsistencies between a witness's pretrial statement and trial testimony do not make the testimony inherently contradictory. *Corbett v. State*, 764 N.E.2d 622, 626 (Ind. 2002). *See also Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002) ("The fact that a witness gives trial testimony that contradicts earlier pre-trial statements does not necessarily render the trial testimony incredibly dubious."). "If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it." *Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001).

[22] At trial, I.G. unequivocally testified that Duarte, while sitting next to her on a sofa, grabbed her by the hips and made some "up and down . . . movements" with his "penis" on her "butt area" while they were both clothed. (Tr. 21, 22). I.G. also unequivocally testified that Duarte, while sitting behind her on a four wheeler, had her remove her pants and underwear and then attempted to insert his penis into in her vagina. After Duarte had ejaculated, he wiped his penis

with a tissue and then wiped I.G.'s vagina with that same tissue. Shortly after this incident, Duarte and I.G. were both diagnosed with gonorrhea, which I.G.'s physician testified was transmitted by "intimate" or "sexual" contact with the oral, genital, or rectal areas. (Tr. 98).

[23] Here, the incredible dubiosity rule is not applicable because I.G.'s trial testimony was unequivocal and was corroborated by other evidence. Duarte's argument is nothing more than an invitation for this Court to reweigh the evidence and judge the credibility of the witness, which we decline to do. *See Drane*, 867 N.E.2d at 146. The jury believed I.G.'s testimony, which was sufficient to support the guilty verdicts for Counts I and III, and we decline to impinge on the jury's credibility determinations. Because Duarte has failed to show that I.G.'s testimony was so inherently improbable that no reasonable trier of fact could believe it and because there is probative evidence from which the jury could have found Duarte guilty beyond a reasonable doubt, we affirm his convictions. *See, e.g.*, *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (holding that the testimony of the seven-year-old victim was not incredibly dubious and affirming the defendant's child molesting conviction), *reh'g denied*, *trans. denied*.

[24] Affirmed.

Baker, J., and Bradford, J., concur.