# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 13 2016, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Welches, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 13, 2016 <br><br> Court of Appeals Case No. 71A05-1512-CR-2249 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jerome Frese, Judge <br><br> Trial Court Cause No. 71D03-1301-FC-10 |

**Altice, Judge.**

**Case Summary**

Following a jury trial, Welches was convicted of two counts of Class C felony child molesting. Welches presents three issues for our review:

> 1. Did the trial court abuse its discretion when it denied Welches's motion, made after the jury had been selected but before the jury had been sworn, to have a seated juror switched to an alternate juror position?

> 2. Did the trial court abuse its discretion in admitting State's Exhibits 1 and 2?

> 3. Did the State present sufficient evidence to sustain Welches's convictions?

We affirm.

## Facts & Procedural History

Welches is the maternal grandfather of K.M., who was born in 2001. Welches moved in with K.M.'s family in June 2010. Welches did not have a separate room, but rather stayed in the living room and slept on the couch as the arrangement was intended to be temporary. K.M. and Welches had a close relationship and they often did things together, such as playing board games, watching television, going to McDonald's or out for ice cream, or taking rides on Welches's moped. K.M.'s brothers, one older and one younger, interacted with Welches but not to the same extent as K.M. K.M.'s mother would sometimes leave K.M. and/or her brothers home with Welches when she had to go out.

[4] During the summer of 2011, K.M.'s relationship with Welches changed. One day while K.M. was home alone with Welches, Welches, who was on a couch in the living room and covered up by a blanket, asked K.M. to come over to him. K.M. lifted the blanket and saw that Welches had pulled his pants down and that his penis was exposed. K.M. then went to her room. A couple of days later, K.M. was on the couch with Welches when he told her to touch his penis with her hand. He gave her instructions and demonstrated how she was to stroke his penis with up and down movements. K.M. touched Welches's penis, which was soft at first and then it got harder. She continued rubbing his penis until he told her to stop. This occurred about once a week for the rest of the summer. In addition to K.M. touching Welches's penis, Welches would put his hands down K.M.'s pants and touch her vagina. K.M. did not tell anyone about what Welches was doing with her because Welches told her not to and she did not think it was wrong at the time.

[5] Welches moved out of K.M.'s home at some point after K.M. started fourth grade. K.M. eventually told her mother what had occurred. K.M.'s mother told K.M.'s father, who then called the police. K.M. was interviewed at the CASIE Center on March 29, 2012, during which she disclosed that she had been sexually abused. K.M. was also physically examined by a nurse. K.M. indicated that she understood the nurse would be examining her "down there because that's where her grandfather had touched her." *Transcript* at 421.

[6] During the summer when the molestations occurred, K.M.'s mother noticed a change in K.M.'s behavior and her physical well-being such that she sought

medical advice. K.M. was diagnosed with anxiety and it was recommended that she see a counselor. Although she did not realize it at the time, K.M.'s mother later considered some of the behavior she saw between K.M. and Welches to be inappropriate especially in light of what K.M. had since disclosed.

On January 16, 2013, the State charged Welches with two counts of Class C felony child molesting. A four-day jury trial commenced on October 26, 2015. After the jury had been selected but before the jury was sworn, Welches moved to have one of the seated jurors switched with an alternate juror because the seated juror lived near the victim's home. The trial court denied Welches's motion and the seated juror remained on the jury. At the conclusion of the evidence, the jury found Welches guilty of both counts of child molesting. The trial court sentenced Welches to consecutive terms of eight years. Welches now appeals. Additional facts will be provided where necessary.

## 1. Request to Switch Juror

Welches argues that the trial court abused its discretion when it denied his motion to switch a seated juror to an alternate juror position and replace him with the alternate juror. "A defendant is entitled as a matter of right only to an impartial jury, Ind. Const. Art. I, § XIII, and not to one of his precise choosing where the issue is merely replacing a regular juror with an alternate." *Jervis v. State*, 679 N.E.2d 875, 882 (Ind. 1997). Indeed, Indiana Trial Rule 47(B) allows alternate jurors to replace regular jurors "who, prior to the time the jury returns

its verdict, become or are found to be unable or disqualified to perform their duties." Trial courts have significant leeway in determining whether to replace a juror with an alternate, and we will reverse only if there was an abuse of discretion. *Harris v. State*, 659 N.E.2d 522, 525 (Ind. 1995); *Ferry v. State*, 453 N.E.2d 207, 213 (Ind. 1983).

[9] At the start of the second day of trial, after the jury had been chosen but before the jury was sworn, Welches informed the court that he had "second thoughts" about one of the jurors because he "sort of recognizes the guy." *Transcript* at 246. Welches noted that because that juror lived in close proximity to the victim and her family, his concern was that the juror might recognize the victim or some of the witnesses at trial and thus, might be biased against him.

[10] In denying Welches's motion, the trial court aptly noted that if there was a concern about the juror's ability to render an impartial decision, such would similarly affect his ability to serve as an alternate juror. The trial court then considered the merits of Welches's request and, concluding that Welches had presented no grounds upon which to excuse the juror, denied Welches's motion.

[11] We agree with the trial court. During *voir dire*, defense counsel explicitly asked the juror whether he was familiar with the victim or any of the potential witnesses. The juror indicated that he was not and assured defense counsel that if he recognized anyone he would let the trial court know. Welches did not use a peremptory challenge to remove the juror from the jury panel. Aside from his

own self-serving assertion that he "sort of recognizes the guy" and that the juror might be biased because he lives near the victim, there is no indication in the record of any potential bias on the part of the juror. The trial court did not abuse its discretion in denying Welches's request to move the juror to an alternate juror position.[1]

## 2. Admission of Evidence

[12] Welches argues that the trial court abused its discretion in admitting into evidence Exhibits 1 and 2,[2] which he described as "cute" photographs of the victim. *Appellant's Brief* at 8. He asserts that because her age was not an issue at trial, the probative value of the photographs was outweighed by unfair prejudice. Trial courts have broad discretion in ruling on the admissibility of evidence. *Palilonis v. State*, 970 N.E.2d 713, 725 (Ind. Ct. App. 2012), *trans. denied*. We review the admission of photographic evidence for an abuse of discretion. *Corbett v. State*, 764 N.E.2d 622, 627 (Ind. 2002). An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Palilonis*, 970 N.E.2d at 725.

---

[1] Welches also notes that he had peremptory challenges remaining at the conclusion of *voir dire* and asserts that it was his right to exercise them. Welches, however, chose not to exercise his peremptory challenge to excuse the juror from the jury panel during *voir dire* and made no request to do so when he raised his concern about the juror prior to the jury being sworn. At that point, Welches sought only to switch the juror with an alternate juror, not dismiss the juror with a peremptory challenge. Welches cannot use this choice as a basis for finding that the trial court abused its discretion.

[2] The pictures depict K.M. around the time the molestations occurred. Exhibit 1 is a photograph of K.M. during the spring of her third grade year and Exhibit 2 is a photograph of K.M. on the first day of fourth grade.

Indiana Evidence Rule 402 provides that relevant evidence is generally admissible and irrelevant evidence is not admissible. Under Indiana Evidence Rule 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

The age of the victim is an essential element of the crime of child molesting. Thus, contrary to Welches's claim, the photographs were relevant as they provided additional proof for the State in establishing K.M.'s age at the time of the molestations. The fact that the pictures depicted K.M. as "cute" does not detract from their relevancy nor does it render them unfairly prejudicial. Welches has not established that the trial court abused its discretion in admitting Exhibits 1 and 2.

### 3. Sufficiency of the Evidence

Welches argues that the evidence is insufficient to sustain his convictions. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence— even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a

reasonable doubt." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Further, a conviction for child molesting may be based solely on the uncorroborated testimony of the victim. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012).

[16] To sustain a conviction for child molesting as a Class C felony, the State was required to prove that Welches knowingly performed or submitted to fondling or touching with K.M., a child under fourteen years of age, with the intent to arouse or satisfy his sexual desires or the sexual desires of K.M. *See* Ind. Code § 35-42-4-3(b). The State alleged for each count that the molestation occurred between July 1, 2010 and August 31, 2011, which is the time period Welches lived with K.M.'s family.

[17] In arguing that the evidence is insufficient to sustain his convictions, Welches simply challenges the credibility of K.M., pointing to evidence that he claims shows he was never alone with K.M. during the period of time the molestations were alleged to have occurred. Welches specifically relies on K.M.'s mother's testimony that she did not recall ever leaving K.M. alone with Welches. K.M.'s mother qualified this testimony, however, by acknowledging that she may have left K.M. at home with Welches and K.M.'s brothers, who generally stayed in their rooms and kept to themselves. Thus, contrary to Welches's claim, even this testimony does not foreclose the possibility that there were opportunities for Welches to be alone with K.M. during the timeframe when K.M. said the molestations occurred.

[18]   Nevertheless, K.M. unequivocally and consistently testified that there were times when she was alone with Welches and that during some of those times, he sexually molested her. The jury as the trier of fact was tasked with assessing the credibility of the witnesses. Welches's argument is simply asking this court to reweigh the evidence or assess the credibility of the witnesses, a task we will not undertake on appeal. K.M.'s testimony provides sufficient evidence to sustain Welches's convictions for child molesting as Class C felonies.

[19]   Judgment affirmed.

[20]   Bradford, J. and Pyle, J., concur.