FILED

Apr 11 2019, 10:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Trevor Wert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 11, 2019

Court of Appeals Case No.
19A-CR-92

Appeal from the
Noble Superior Court

The Honorable
Robert E. Kirsch, Judge

Trial Court Cause No.
57D01-1811-MR-4

**Vaidik, Chief Judge.**

# Case Summary

[1]     Trevor Wert appeals his sixty-five-year murder sentence for beating to death a
two-year-old child in his care. We affirm Wert's sentence but remand for the
trial court to correct an error in its written sentencing order.

# Facts and Procedural History

[2] In October 2018, forty-two-year-old Wert and his ex-wife, Samantha, lived together in Noble County with their young son. Misty Matson had two daughters, K.M. and two-year-old Railee Ewing. Misty worked third shift at a factory, and Samantha watched K.M. and Railee overnight two or three times a week while Misty worked. On October 28, Samantha started working with Misty at the factory, thereby making Wert the sole caregiver for K.M. and Railee when Misty and Samantha were at work.

[3] On October 31, Misty dropped off her daughters at Wert's house and went to work. Wert and his young son were home. When Misty arrived at Wert's house to pick up her daughters on the morning of November 1, Wert told her that Railee had been injured "during the night" when she fell and hit her face on the bathtub. Appellant's App. Vol. II p. 43. Misty called 911 to say that she was driving Railee, who was limp, to the hospital. EMS met Misty on the way and transported Railee the rest of the way to the hospital, where she was pronounced dead at 7:47 a.m. *See* Ex. 1 (hospital records stating that Railee was "clearly dead on arrival"). The emergency-room physician observed "extensive bruising over [Railee's] entire body" and noted that the bruising was "to[o] extensive" to even document. *Id.* The physician also observed blood in Railee's diaper and that there "appear[ed] to be oozing and lacerations to both the vaginal orifice and anus." *Id.*

[4]    Wert was interviewed by detectives several times on November 1 and 2. Wert told the detectives that in the early-morning hours of November 1, he was awakened by Railee crying and found her in the bathroom running bath water. According to Wert, he became "enraged" and struck Railee multiple times with his "fists" and "legs." Tr. p. 16; Appellant's App. Vol. II p. 44. When Railee tried to leave the bathroom, Wert kicked her in the buttocks, slamming her into the door frame. Railee fell silent. Wert then changed Railee's diaper and covered her body and head with a bathrobe.

[5]    An autopsy was performed on November 2. Because of the injuries to Railee's vagina and anus, a sexual-assault nurse attended the autopsy. According to the nurse, Railee's injuries included "everything under the sun," such as "significant anal injury," "significant vaginal injury," abrasions, lacerations, bruising, petechiae, and blunt-force trauma. Tr. pp. 23-24. The nurse said she had "never seen anything like this ever." *Id.* at 23. According to the forensic pathologist, the cause of Railee's death was multiple blunt-force traumatic injuries. Ex. 1.

[6]    On November 5, the State charged Wert with murder and Level 1 felony child molesting. Exactly one month later, Wert and the State entered into a plea agreement. According to the agreement, Wert would plead guilty to murder, and the State would dismiss the child-molesting charge. Wert's sentence was left to the discretion of the trial court as follows:

> Upon the Defendant's plea . . . to [murder], the parties shall be free to argue to the Court as to the appropriate sentence deemed appropriate [sic], subject to the following:

> The parties agree that the sentencing range must, by law, be between 45 and 65 years, and that no portion of the sentence less than 45 years may be suspended. The State agrees that neither the death penalty nor life without parole shall be imposed. Any other terms of the sentence, including any special terms and conditions of probation (if probation is Ordered), restitution, fines, and Court costs, shall be to the Court's discretion.

Appellant's App. Vol. II pp. 30-31; *see also* Ind. Code § 35-50-2-3(a) ("A person who commits murder shall be imprisoned for a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years.").

[7] At the December 31 sentencing hearing, defense counsel presented several letters on Wert's behalf, and the State presented the testimony of the sexual-assault nurse and several of Railee's family members. The State also introduced several exhibits, including the hospital records and preliminary autopsy report (Exhibit 1) and an autopsy photograph (Exhibit 2). Wert then gave a brief statement: "I am sorry. I do apologize and take responsibility for my actions." Tr. p. 38. Defense counsel argued that there were several mitigators. First, defense counsel noted that Wert pled guilty shortly after being charged. Second, defense counsel noted that Wert had "significant medical problems," including being on dialysis, having degenerative back disease, and having suffered a stroke. *Id.* at 39. Defense counsel acknowledged that in light of the

studies showing the life expectancy of dialysis patients, "any sentence that [the trial court] hand[s] out today is probably a death sentence to [Wert]." *Id.* Third, defense counsel noted that, although not rising to the level of a defense, the offense occurred "during a period of time that [Wert] was on dialysis" and "lacked appropriate medication to deal with the pain," causing him to "over[re]act[]" to the situation. *Id.* at 39-40. Defense counsel ended by "ask[ing] the Court to consider [these proposed mitigators] when it comes up to what it believes the appropriate sentence is." *Id.* at 41.

[8] The State acknowledged that the case "was getting resolved at a very quick pace" due to Wert's early guilty plea. *Id.* at 41. The State also acknowledged Wert's medical issues but argued that "even the minimum sentence . . . would mean that he would spend the rest of his natural life in prison." *Id.* The State then argued that there were several aggravators, including Wert's criminal history, his abuse of a position of trust, Railee's young age, and the nature and circumstances of the crime. After highlighting that the sentencing range was "45 to 65 years," the State argued that "the maximum 65-year sentence is appropriate" in this case. *Id.* at 42, 43.

[9] In pronouncing sentence, the trial court first explained that Wert's sentence could be "anywhere from 45 to 65 years. The advisory sentence being 55 years." *Id.* at 43. The court also explained that in determining an appropriate sentence, it considered numerous factors. The court then identified the following mitigators: (1) Wert pled guilty "about as early as humanly possible," saving Noble County "a fair amount of expense" for his dialysis treatments; (2)

although the court was not compelled by Wert's in-court apology, it found that he had "taken some responsibility"; and (3) the fact that Wert was without his pain medication that night possibly explained why his behavior was so violent. *Id.* at 44. The court identified the following aggravators: (1) Railee was only two years old; (2) two other children were home at the time, Wert's son and K.M.; (3) Wert was in a position of trust with Railee; (4) Wert had a criminal history (four misdemeanors and two felonies); and (5) the nature and circumstances of the crime—as reflected by Exhibit 2 (autopsy photograph)— were "horrific." *Id.* at 45. The court then concluded:

> [Defense counsel] mentioned that given your medical condition that whether [the sentence is] 45 years o[r] 65 years [it is] undoubtedly or highly likely that any sentence the Court imposes will be basically . . . life in prison for the rest of your life. So, at this point balancing the mitigating circumstances with the aggravating circumstances . . . I think that the aggravating circumstances . . . highly outweigh any mitigating circumstances the Court can find.

*Id.* at 45-46. The court sentenced Wert to the maximum term of sixty-five years.

[10] The court later issued a written sentencing order, which provides in pertinent part:

> The reason for the imposition of this sentence is that it is the one called for in the plea agreement by the Prosecuting Attorney and the Defendant and which the Court has accepted. The Court is, therefore, bound to impose it.

Appellant's App. Vol. II p. 6.

[11]    Wert now appeals his sentence.

# Discussion and Decision

[12]    Wert challenges his sentence on multiple fronts. First, he contends that the trial court erred "in entering a written sentencing order which suggests the trial court believed it was obligated under the terms of the plea agreement to impose no less than a 65-year sentence." Appellant's Br. p. 9. Second, he contends that the trial court erred in not identifying his "poor health" as a mitigator. *Id.* Finally, he contends that his sentence is inappropriate in light of the nature of the offense and his character.

# I. Error in Sentencing Order

[13]    Wert first contends that the trial court's written sentencing order misinterpreted the terms of his plea agreement. Wert points out that contrary to the written sentencing order, which provides that Wert's plea agreement "called for" a sixty-five-year sentence, Appellant's App. Vol. II p. 6, his plea agreement actually provides that "the trial court would have discretion to impose a sentence between 45 and 65 years imprisonment," Appellant's Br. p. 13. Accordingly, he argues that his sentence "should be reversed and the matter remanded for a new sentencing hearing." *Id.* at 14.

[14]    The State concedes that the written sentencing order erroneously provides that Wert's sixty-five-year sentence was imposed "because that was what was

required by the plea agreement." Appellee's Br. p. 10. However, the State argues that this does not warrant the reversal of Wert's sentence and a remand for a new sentencing hearing. We agree with the State.

[15] In reviewing a sentencing decision in a non-capital case, we are not limited to the written sentencing statement but may consider the trial court's comments in the transcript of the sentencing proceedings. *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002). Here, Wert's plea agreement provides that the trial court had the discretion to impose a sentence between forty-five and sixty-five years, the statutory sentencing range for murder. *See* I.C. § 35-50-2-3(a). The trial court's comments at the sentencing hearing reflect that the court understood that it had discretion to sentence Wert within this range. First, both defense counsel and the State argued at sentencing that the trial court had the discretion to impose a sentence between forty-five and sixty-five years. Second, the trial court explicitly acknowledged this range before addressing the factors that it was considering. *See* Tr. p. 43 ("In . . . determining what the appropriate sentence should be **in this case**, [the court] obviously is constrained by the law. The law provides that for a conviction for murder the sentence is anywhere from 45 to 65 years. The advisory sentence being 55 years." (emphasis added)). Third, the trial court identified aggravators and mitigators and then balanced them. Finally, right before imposing sentence, the trial court again recognized the sentencing range when it said that whether Wert's sentence was forty-five or sixty-five years, it would be a life sentence for him. *Id.* at 46. In light of the trial court's comments at the sentencing hearing, we conclude that the trial

court did not misinterpret the terms of Wert's plea agreement but rather made a mistake in its written sentencing order. We therefore remand this case to the trial court for the limited purpose of issuing a new written sentencing order.

## II. Failure to Find Mitigator

[16] Wert next contends that the trial court erred in failing to find his debilitating health conditions as a mitigator. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). One way that a trial court may abuse its discretion is by not recognizing mitigators that are clearly supported by the record and advanced for consideration. *Id.* at 491. The defendant bears the burden of demonstrating that "the trial court failed to find or identify a mitigating factor by establishing that the mitigating evidence is both significant and clearly supported by the record." *McElfresh v. State*, 51 N.E.3d 103, 112 (Ind. 2016) (quotation omitted).

[17] Here, the trial court identified as a mitigator that Wert was without his pain medication for his debilitating health conditions at the time of the offense, which may have explained why he acted so violently:

> I will take it as accepted that somehow on this particular evening he was somehow without his pain medication. I have had no evidence or no understanding as to why he was without his pain medication or the lack of pain medication, how that affected him, but I will accept that as certainly not, the word justification is not

> appropriate, but as an explanation as to possibly why his
> behavior was so violent.

Tr. p. 44. To the extent Wert argues that the trial court should have **separately** identified his debilitating health conditions as a mitigator, the court considered this when it recognized that whether Wert's sentence was forty-five or sixty-five years, it would be a life sentence for him given his health conditions. In other words, the trial court found that Wert's health conditions did not have any effect on a murder sentence. We find no abuse of discretion.

# III. Inappropriate Sentence

[18] Last, Wert contends that his maximum sentence of sixty-five years is inappropriate. He asks us to reduce it to fifty-five years (with five years suspended to probation) pursuant to Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because we generally defer to the judgment of trial courts in sentencing matters, *Norris v. State*, 27 N.E.3d 333, 335-36 (Ind. Ct. App. 2015), defendants have the burden of persuading us that their sentences are inappropriate, *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)).

[19]    Wert concedes that the nature of the offense is "significant and tragic."

Appellant's Br. p. 15. As the trial court described the offense:

> The photo, State's Exhibit #2, that photo by itself speaks to the violence and the horrificness of what happened to this young child that night. I can understand the [sexual-assault] nurse, . . . you know she does this for a living and unfortunately, she probably has seen too many autopsy photos and autopsies, but I think that that even shook her.

> * * * * *

> I don't know why this happened on this particular night. I don't know why. All I know is that it did happen number one, and number two the results were horrific. They were beyond the pale and we now have lost a young child who certainly no one can suggest did anything to justify or cause what you did to her. And, once again, looking at the picture, I don't know how anybody can justify or say, well, . . . the picture of the autopsy certainly puts a whole new light on what happened that particular evening.

Tr. pp. 44-45. The sexual-assault nurse testified at the sentencing hearing as follows:

> I was asked to come collect evidence on November 2nd, and I took photographs, collected evidence and provided documentation of that encounter. Only one percent of the time will we ever see anal injury, yet we did see significant anal injury. Only five to ten percent of the time will we ever see vaginal injury, yet we saw significant vaginal injury. I've worked there for eight years and I have never seen anything like this ever. I had to hold her, position her, and get very close to her face to try to collect evidence and do what I needed to do as a nurse. This

type of case leaves scars big time on all of us that had to deal with her following her death. I will never be able to say exactly what happened to her, because she couldn't tell me.

*Id.* at 23. Perhaps most chilling is that, as Wert acknowledges, the final blow occurred when Railee tried to leave the bathroom and Wert kicked her in the buttocks, propelling her into the door frame. The nature of the offense supports the maximum sentence.

[20] As for Wert's character, his PSI reveals that he has at least two prior felony convictions. It is true that his felony convictions are non-violent and that he pled guilty one month after being charged and is in poor health. But even considering these things in Wert's favor, they do not overcome the horrific nature of this offense. Wert has failed to persuade us that his sixty-five-year sentence is inappropriate.

[21] Affirmed and remanded.

Kirsch, J., and Altice, J., concur.