# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2020, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Miriam Huck
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy K. Meadows,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 6, 2020<br><br>Court of Appeals Case No.<br>20A-CR-420<br><br>Appeal from the Bartholomew<br>Circuit Court<br><br>The Honorable Kelly S. Benjamin,<br>Judge<br><br>Trial Court Cause No.<br>03C01-1907-F2-4175 |

**Baker, Judge.**

[1] Timothy Meadows appeals the sentence imposed by the trial court after Meadows pleaded guilty to Level 3 felony possession of methamphetamine. Meadows argues that the trial court neglected to consider certain mitigators that were supported by the record and that the sentence is inappropriate in light of the nature of the offense and his character. Finding no error and that the sentence is not inappropriate, we affirm.

# Facts

[2] In February 2019, the Columbus Police Department received information that Meadows was "moving" large amounts of methamphetamine. Tr. Vol. II p. 18. Police began an investigation that involved surveillance and monitoring of calls that Meadows received from inmates in the Bartholomew and Jackson County Jails. During just thirty days of monitoring, Meadows received over 200 calls from inmates, with 90% of the conversations "related to dealing in narcotics [and] the potential of trafficking narcotics into the jail." *Id.* at 19.

[3] During the investigation, police arrested another drug dealer who claimed to be supplying Meadows with a quarter to a half pound of methamphetamine per week. After that dealer's arrest, police listened to a three-way call with the arrested dealer, Meadows, and an Indianapolis drug supplier, during which the dealer vouched for Meadows to the supplier. After that call, Meadows began traveling to Indianapolis regularly.

[4] After approximately five months of surveillance, police stopped Meadows after a trip to Indianapolis. Officers recovered approximately seventy-five grams of

methamphetamine during the stop. Meadows admitted that the drugs were his, that he was a drug dealer, and that he was traveling to Indianapolis at least once daily.

[5] On June 23, 2019, the State charged Meadows with Level 2 felony possession of methamphetamine over ten grams with intent to deal and Level 3 felony possession of methamphetamine over twenty-eight grams. On December 23, 2019, Meadows pleaded guilty to the Level 3 felony in exchange for the State's agreement to dismiss the Level 2 felony, to refrain from filing a habitual offender enhancement, and to refrain from objecting to a placement in purposeful incarceration.

[6] At the January 23, 2020, sentencing hearing, Meadows testified that he had an "out of control" methamphetamine habit and that he used eight or nine grams a day. *Id.* at 10. He testified that the seventy-five grams found at the time of his arrest was all for his personal consumption and claimed to have purchased the drugs for $600, which was income from his part-time job. In response, the State presented testimony from a police lieutenant regarding the long-term investigation into Meadows's activities. The lieutenant testified that based on his experience, a heavy methamphetamine user generally consumes about one gram a day, that he has never found someone using eight or nine grams a day that has "lived to tell about it," and that the very low end price for buying seventy-five grams of bulk methamphetamine would be about $1200. *Id.* at 24-25.

[7] The trial court found the following aggravators: (1) Meadows's criminal history; (2) Meadows has violated probation in the past; (3) Meadows has failed to take advantage of multiple opportunities for substance abuse treatment; and (4) Meadows is a threat to the community based on the amount of drugs and his admission to the police that he is a dealer. The trial court found the following mitigators: (1) Meadows's willingness to take responsibility; (2) Meadows's admissions to police at the time of arrest; and (3) Meadows's guilty plea. The trial court sentenced Meadows to fourteen years incarceration and did not recommend him for purposeful incarceration. It observed that if Meadows is serious about being ready for treatment, he should participate with the available Department of Correction (DOC) programs and then seek a sentence modification:

> If you want to get help, you do it. If you finish [the DOC programs] and you think you deserve another chance, then you write a motion asking to see if I will set that. You do the work. I'm not going to do it for you anymore. We already gave you the programs. You went to DOC. You knew there was [sic] programs there before; you ignored them. You [claimed that you] didn't have a problem. If you are serious about saying I have a problem now, then you go do it and you prove why I should bring you back here. But I'm not going to do it automatically.

*Id.* at 35-36. Meadows now appeals.

# Discussion and Decision

## I. Mitigators

[8] Meadows first argues that the trial court erred by failing to consider his serious substance abuse problem and desire to obtain treatment as mitigating factors. A trial court may err in the sentencing process by, in relevant part, giving reasons for the sentence that are not supported by the record, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons for a sentence that are improper as a matter of law. *Anglemyer v. State*, 868 N.E.2d 482, 492 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). In arguing that the trial court overlooked a mitigator, Meadows bears the burden of showing that the mitigating circumstance is both significant and clearly supported by the record. *Wert v. State*, 121 N.E.3d 1079, 1084 (Ind. Ct. App. 2019), *trans. denied*.

[9] Meadows directs our attention to the evidence in the record showing that he has a very serious substance abuse problem. He notes that his problem is so severe that he frequently experiences hallucinations, that he was abusing other substances in addition to methamphetamine, and that he has been using alcohol and/or drugs nearly every day since he was fifteen years old. He also insists that he has finally recognized the seriousness of his problem and notes that he told the trial court that he is ready and willing to begin substance abuse treatment. Meadows points out that he sought out treatment, applying for and being accepted to the treatment program through Wheeler Mission before he was sentenced.

[10]     We do not disagree with the assertion that drug addiction can be a serious, lifelong problem that may take multiple attempts, over multiple years, to treat successfully, but that does not mean that it is automatically a mitigator in every case. *Roney v. State*, 872 N.E.2d 192, 199 (Ind. Ct. App. 2007) (noting that a history of substance abuse may constitute a valid aggravator), *abrogated in part on other grounds by Bethea v. State*, 983 N.E.2d 1134, 1142-45 (Ind. 2013). Here, the trial court did consider Meadows's substance abuse issues, but observed that Meadows has had opportunities for treatment through the correctional system beginning in 1999 and, in fact, had treatment orders in 2004, 2005, 2006, and 2008, with which he failed to comply. We cannot fault the trial court's skepticism that Meadows is truly open to treatment at this point given his history. Given these facts, as well as the caselaw establishing that addiction is not automatically a mitigator (and may even be an aggravator), we find that the trial court did not err by declining to find Meadows's substance abuse issue or willingness to enter treatment as mitigators.

## II.  Appropriateness

[11]     Next, Meadows argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character pursuant to Indiana Appellate Rule 7(B). We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292

(Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[12]     Meadows pleaded guilty to Level 3 felony possession of methamphetamine. For this conviction, he faced a term of three to sixteen years, with an advisory term of nine years imprisonment. Ind. Code § 35-50-2-5(b). The trial court imposed a fourteen-year sentence, though it noted that it would be open to modification if Meadows completes the substance abuse programs available through the DOC.

[13]     As to the nature of the offense, Meadows's drug activity resulted in a months-long police investigation. During the investigation he was overheard repeatedly discussing drug deals, including trafficking drugs to inmates, and was observed regularly traveling to the location of his supplier. When arrested, Meadows was found with seventy-five grams of methamphetamine—almost three times the amount required for the offense of which he was convicted—and admitted to being a drug dealer.

[14]     As to his character, we acknowledge the seriousness of his substance abuse problem. But we must also note his lengthy criminal history, which includes five felony convictions, seven misdemeanor convictions, and two juvenile informal adjustments. He has also violated probation and has never completed any court-ordered substance abuse treatment despite many opportunities over many years. Additionally, we note that his acceptance of responsibility was undermined by his far-fetched claims at sentencing, including that the seventy-

five grams of methamphetamine were solely for personal use, that he uses eight to nine grams per day, and that he is able to buy the drugs from money made in his part-time employment.

[15] We note that, while the trial court imposed a sentence significantly above the advisory term, it indicated its willingness to consider a modification if Meadows successfully completes the available DOC substance abuse programs. Given this record and the trial court's openness to a future sentence modification, we find that the sentence imposed by the trial court was not inappropriate in light of the nature of the offense and Meadows's character.

[16] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.