Joseph C. MONEGAN, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 89S00–0010–CR–600.

Supreme Court of Indiana.

Oct. 16, 2001.

Douglas Norris, Cambridge City, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Joseph Monegan appeals his sentence for murder. Among other things, he challenges as unexplained the trial court's finding that he was in need of correctional and rehabilitative treatment that could best be provided by commitment to a penal facility. We conclude that Senior Judge Reinke's findings on this point are a model of clarity.

### Facts and Procedural History

In 1996, a jury found Monegan guilty of murdering Tyrone Deloney, and the trial court subsequently sentenced him to life without parole. *See Monegan v. State,* 721 N.E.2d 243, 246–47 (Ind.1999). On appeal, we ruled that the trial court had unconstitutionally applied an aggravating circumstance under Indiana Code § 35–50–2–9(b)(8) because the aggravator, a prior killing, had not been reduced to conviction. (*Id.* at 257.) We remanded to the trial court for re-sentencing to a term of years. (*Id.*)

On remand, the trial court sentenced Monegan to the presumptive term of fifty years and enhanced his sentence by ten years. The court listed three aggravating factors as justifications for the enhanced sentence. Monegan again appeals his sentence. We affirm.

### I. Aggravating Factors

We turn first to Monegan's contention that the trial court improperly considered several aggravating factors in enhancing his sentence. In its sentencing order, the court listed three aggravating factors: (1) Monegan's history of criminal and delin-

quent activity, (2) the risk that Monegan would commit other violent crimes, and (3) the need for correctional and rehabilitative treatment that could best be provided by commitment to a penal facility. Monegan argues that the trial court failed to provide a specific statement regarding the need for correctional or rehabilitative treatment and that the court improperly considered four apprehensions that did not result in convictions.

Sentencing decisions rest within the discretion of the trial court, and we review such decisions only for an abuse of discretion. *See, e.g., Jones v. State,* 698 N.E.2d 289, 290 (Ind.1998); *Morgan v. State,* 675 N.E.2d 1067, 1072 (Ind.1996) (citation omitted). The trial court has discretion to determine whether a presumptive sentence will be enhanced due to aggravating factors. *Jones,* 698 N.E.2d at 290 (citing *Sims v. State,* 585 N.E.2d 271, 272 (Ind.1992)).

When enhancing a sentence, a trial court is required to state its specific reasons for doing so. *Georgopulos v. State,* 735 N.E.2d 1138 (Ind.2000). Accordingly, the court's sentencing statement must: (1) identify significant aggravating and mitigating circumstances, (2) state the specific reason why each circumstance is aggravating or mitigating, and (3) demonstrate that it balanced the aggravating and mitigating circumstances in reaching its sentence. *Ajabu v. State,* 722 N.E.2d 339, 343 (Ind.2000).

In relying on the correctional or rehabilitative treatment aggravator of Indiana Code § 35–38–1–7.1(b)(3), it is not enough that the sentencing court simply recite the statutory language. *See Culver v. State,* 727 N.E.2d 1062, 1072 (Ind.2000). Rather, "the court must give a specific and

individualized reason why the defendant is in need of correctional [or rehabilitative] treatment that can best be provided by a period of incarceration *in excess* of the presumptive sentence." *Ajabu,* 722 N.E.2d at 343 (emphasis in original).

Monegan argues that the court failed to give an individualized statement explaining why sixty years of correctional or rehabilitative treatment would be necessary as opposed to the presumptive term of fifty years. On the contrary, after reading the sentencing order and the transcript of the sentencing hearing, we conclude that Judge Reinke did a commendable job of explaining why an enhanced sentence was necessary in this case.

Judge Reinke set out Monegan's long history of encounters with the law and explained how each encounter failed to deter Monegan from criminal conduct. The judge also noted the various types of care and rehabilitation the juvenile justice system had provided Monegan since the age of twelve, all of which proved unsuccessful.[1] Judge Reinke concluded his discussion of the aggravating factors by noting, "All of these factors demonstrate that any rehabilitation of [Monegan] will be extremely difficult to achieve, and will require extreme long term commitment." (Resent. R. at 84.) This was a textbook explanation.

Monegan next argues that the trial court improperly considered four prior apprehensions that did not result in convictions. In the sentencing order, Judge Reinke listed as support for the recidivism aggravator the fact that Monegan was arrested in January 1995 for receiving stolen property and carrying a firearm without a license. (Resent. R. at 82.) The two charges were subsequently dismissed. (R. at 313–15.) In addition, three other arrests that did not result in convictions were mentioned during the sentencing hearing.[2] (Resent. R. at 139–40.)

A similar claim was advanced in *Sherwood v. State,* 702 N.E.2d 694, 700 (Ind. 1998), in which the trial court considered defendant's prior arrest for wrongful use of cocaine for sentencing purposes. The trial court listed this prior arrest as an aggravator. *See id.* We held that to the extent the trial court viewed the prior arrest as evidence of criminal history it would be improper under Indiana Code § 35–38–1–7.1(b)(2). *See id.*

On the other hand, such an arrest could properly be considered under Indiana Code § 35–38–1–7.1(d) as evidence that "subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State." *Id.* (quoting *Tunstill v. State,* 568 N.E.2d 539, 545 (Ind.1991)). As noted in the *Tunstill* opinion, we have upheld this use of arrests

1. Starting at the age of twelve, Monegan was apprehended and released to his mother thirteen times, detained at the Mary E. Hill Youth Shelter in Wayne County twice, detained at the Henry County Youth Center three times, committed to Boys' School, and completed the Aurora workshop for substance abuse. Despite these efforts, Monegan continued his criminal conduct. Moreover, Monegan compiled nineteen violations while at the Department of Correction following his first sentencing and was the subject of four incident reports while at the Wayne County

jail waiting for re-sentencing. (Resent. R. at 83.)

2. A 1991 arrest for child molestation was dismissed due to insufficient evidence. Some 1993 charges for theft, possession of stolen property, and false report were dismissed because Monegan successfully completed the Aurora workshop for substance abuse. (Appellee's Br. at 9.) Finally, 1994 charges of vehicle theft, robbery, and battery were found not true, although he was found to have resisted law enforcement. (R. at 313–15.)

not reduced to convictions in a long line of cases. *See, e.g., Creasy v. State*, 518 N.E.2d 785, 787 (Ind.1988); *Dillon v. State*, 492 N.E.2d 661, 663 (Ind.1986).

That is precisely how this sentencing court considered the arrests. Regarding the 1995 arrest, the court stated in the sentencing order:

> Such arrest does not establish the fact of the commission of the acts for which [Monegan] was arrested, but it does establish that [Monegan's] subsequent antisocial behavior was not deterred even after [Monegan] was so subject to the police authority and made aware of the State's oversight of the activities of its citizens.

(Resent. R. at 82.) Moreover, with regard to the other three unconvicted arrests, the court said:

> Those matters were not pursued to criminal, to adjudication, but on the other hand the fact that [Monegan] knows that he is the subject of an arrest, and he knows there is a Criminal Justice System out there that can impose sanctions, and even after he knew it for months he continued to deal drugs to hundreds of people . . . .

(Resent. R. at 141.) Rather than as evidence of prior criminal history, the trial court properly deemed Monegan's four prior apprehensions as evidence that his antisocial behavior was not deterred by numerous encounters with the law. There was no error on this point.

## II. Due Process Violation

■ Monegan next claims that consideration of prior arrests that did not result in convictions violated his due process rights under the Fourteenth Amendment of the U.S. Constitution. Tied closely to his first argument, Monegan would have us overturn or revise our holding in *Sherwood*, 702 N.E.2d at 700, in which we recognized a trial court's power to make limited use of prior arrests as an aggravating factor. He urges that we prohibit any use of prior arrests as an aggravating circumstance. Monegan argues, "If the court were able to consider the arrests and disregard the favorable resolutions, the defendant could never effectively refute the criminal charge[s]." (Appellant's Rep. Br. at 15.)

Monegan's argument would be appropriate had the trial court used these arrests under Indiana Code § 35–38–1–7.1(b)(2) as evidence of prior criminal activity. We have repeatedly rejected this use. *See, e.g., Tunstill*, 568 N.E.2d at 545. As we have just noted, however, Monegan's prior arrests were considered for their psychological impact upon the defendant under Indiana Code § 35–38–1–7.1(d)[3], which gives a sentencing court the flexibility to consider any factor which reflects on the defendant's character.

■ A record of prior arrests reveals that subsequent antisocial behavior has not been deterred although the defendant has been subject to the police authority of the State and made acutely aware of its regulation of possible misconduct. As aggravating circumstances go, this seems less weighty than other, more tangible aggravators, but we are not persuaded that it is unconstitutional to take it into account.

As authority for the argument that this use of prior arrests violates his Due Process rights, Monegan cites two U.S. Supreme Court decisions. The first, *Gardner v. Florida*, 430 U.S. 349, 361–62, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), is a

**3.** The section states: "The criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence." Ind.Code Ann. § 35–38–1–7.1(d) (West 1998).

plurality decision in which the Court invalidated the imposition of a death sentence because the sentencing judge relied on a confidential, undisclosed pre-sentence investigation report: The second, *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), involved the reversal of two sentences imposed on an unrepresented defendant because the absence of counsel prevented the defendant from effectively refuting the sentencing court's misreading of the record. Neither is applicable to the case at hand.

First, the trial court did not rely on any undisclosed or confidential information. The court and counsel discussed Monegan's history of criminal conduct numerous times. (Resent. R. at 126, 129–31, 133, 137–38.) Second, Monegan was represented throughout trial by counsel, who had the opportunity to correct any misreading of the record by the trial court. Finally, Monegan's record was not misread. As previously noted, Judge Reinke thoroughly analyzed and discussed Monegan's past conduct in deciding upon the sentence imposed. His consideration of Monegan's prior arrests, analyzed in the way he did and placed alongside a substantial list of convictions, was not a denial of Due Process.

### III. Age as a Mitigating Factor

Monegan next asserts that his sentence was manifestly unreasonable because the trial court failed to give significant weight to Monegan's age as a mitigating factor.

The court identified Monegan's age as a mitigator, but attached little weight to it because Monegan was less than forty days from his eighteenth birthday. Monegan therefore urges us to reduce his sentence. *See* Ind. Appellate Rule 7(B).[4]

A trial court is not obligated to "credit or weigh a possible mitigating circumstance as defendant suggests it should be credited or weighed." *Archer v. State*, 689 N.E.2d 678, 684 (Ind.1997) (citations omitted). As we stated in *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999), "Age is neither a statutory nor a per se mitigating factor. There are cunning children and there are naïve adults." In other words, focusing on chronological age, while often a shorthand for measuring culpability, is frequently not the end of the inquiry for people in their teens and early twenties. *See Ellis v. State*, 736 N.E.2d 731, 736 (Ind.2000). There are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful.

A cursory examination of Monegan's record of criminal activity in addition to the crimes he admitted at trial reveals a trail of criminal conduct that is rather substantial for a person of his age.[5] Certainly, Monegan was beyond the age where the law commands special treatment.[6] "Our statutes 'evince strong legislative sentiment' that a child younger than sixteen should be treated differently in our

---

**4.** Formerly App. R. 17(B).

**5.** The Sentencing Order refers to the following crimes: (1) commission of an act as a minor that if performed by an adult would have been class B felony robbery; (2) two counts of resisting law enforcement; (3) a prior murder on March 25, 1995, established by evidence introduced at trial; (4) numerous acts of dealing in cocaine, admitted to at trial; (5) carrying a loaded weapon and pointing it at other persons, admitted to at trial; and (6)

frequent use of marijuana, admitted to at trial. (Resent. R. at 80–81.) Of course, Monegan was also convicted of the murder upon which this appeal is based.

**6.** For instance, Indiana law provides that a child under the age of sixteen who commits murder cannot be sentenced to death or life imprisonment without parole. *See* Ind.Code § 35–50–2–3(b) (West 1998).

judicial and correctional systems than one who is sixteen or older." *Trowbridge v. State*, 717 N.E.2d 138, 150 n. 7 (Ind.1999) (quoting *Carter v. State*, 711 N.E.2d 835, 843 (Ind.1999)).

Monegan cites several cases where youth was a significant mitigating factor warranting a reduction in sentence, but these examples are easily distinguishable. *See, e.g., Brown v. State*, 720 N.E.2d 1157, 1159–60 (Ind.1999) (consecutive sentences of sixty-five and thirty years for murder and conspiracy imposed upon a sixteen-year-old should be served concurrently given defendant's youth, sparse criminal history and role as a follower); *Carter*, 711 N.E.2d at 836, 843 (Ind.1999) (reducing a fourteen-year-old's sixty-year sentence to fifty years given the defendant's youth); *Walton v. State*, 650 N.E.2d 1134, 1135–37 (Ind.1995) (reducing a sixteen-year-old defendant's 120–year sentence to two consecutive forty-year sentences given his youth, mental illness, and lack of prior criminal history); *Hill v. State*, 499 N.E.2d 1103, 1109–10 (Ind.1986) (reducing an eighteen-year-old's fifty-year burglary sentence to thirty-five years given defendant's age, the crime committed, and lack of prior criminal history).

Considering Monegan's significant history of criminal conduct, the seriousness of the crime involved, and the sentence imposed, the refusal to give significant weight to Monegan's age as a mitigating factor did not produce a sentence that is manifestly unreasonable.

## IV. Applicable Sentencing Statute

■ Monegan's final claim alleges that the trial court applied the wrong version of Indiana Code § 35–50–2–3 at re-sentencing.[7] The court imposed the maximum possible sentence, the presumptive fifty-year period enhanced by ten years. Monegan argues that the appropriate sentence was a presumptive forty-year period with a twenty-year enhancement.

As we held in *Smith v. State*, 675 N.E.2d 693, 695–97 (Ind.1996), and *Hicks v. State*, 690 N.E.2d 215, 223 (Ind.1997), for murders occurring after May 5, 1995, the presumptive term is fifty years with the possibility of a ten-year enhancement. Monegan murdered Deloney on June 7, 1995. *See Monegan*, 721 N.E.2d at 246. The court thus used the correct sentencing statute.

## Conclusion

We affirm Monegan's sixty-year sentence for murder.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

**7.** In 1994, the General Assembly twice amended Indiana Code § 35–50–2–3. The first amendment changed the presumptive sentence for murder in section 3(a) from forty years to fifty years and reduced the possible enhancement from twenty years to ten years. *See* P.L. 164–1994 (approved March 11, 1994 and effective July 1, 1994). Soon thereafter, the General Assembly also amended the section to exclude mentally retarded individuals from receiving death or life without parole sentences, but it failed to incorporate the changes of the first amendment. *See* P.L. 158–1994 (approved March 15, 1994 and effective July 1, 1994). The General Assembly corrected the problem on May 5, 1995 by passing P.L. 2–1995, thereby integrating both amendments. Nevertheless, between July 1, 1994 and May 5, 1995, there were two presumptive sentences for murder. *See Smith v. State*, 675 N.E.2d 693, 695 (Ind.1996).