## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2019, 10:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
LaPlante LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jarvice Sears, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 31, 2019 <br><br> Court of Appeals Case No. 19A-CR-478 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Robert Pigman, Judge <br><br> Trial Court Cause No. 82D03-1510-F1-6635 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Jarvice Sears was found guilty of two counts of Level 1 felony burglary, one count of Level 2 felony attempted robbery, four counts of Level 3 felony attempted robbery, and two counts of Level 3 felony aggravated battery. The trial court sentenced Sears to an aggregate sentence of sixty-nine years executed in the Indiana Department of Correction ("DOC"). On direct appeal, Sears alleged that several of his convictions violated double jeopardy and that his sentence was inappropriate. *See Sears v. State*, No. 82A01-1708-CR-1815 (Ind. Ct. App. July 17, 2018). We concluded that Sears's convictions for two counts of Level 1 felony burglary could not stand and remanded with instructions to vacate a burglary conviction. We also remanded with instructions to vacate Sears's convictions for the two counts of Level 3 felony aggravated battery. We chose not to address Sears's contention that his sixty-nine-year sentence was inappropriate, finding such review premature, and we instructed the trial court to resentence him. At resentencing, Sears was sentenced to fifty-nine years in the DOC. Sears now appeals, raising one issue for our review, that is, whether his sentence is inappropriate in light of the nature of the offenses and his character. Concluding that the sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Sears's direct appeal:

There are two upstairs apartments above the 711 Tavern on 711 West Virginia Street in Evansville, Apartments A and B, which are accessed by a common hallway. In October of 2015, Jeremy Herbert lived in Apartment A, and Logan Orth used the apartment to deal marijuana. On October 25, 2015, Diego Thomas and Marquell Jackson decided to rob Orth because Thomas knew that Orth was a drug dealer and believed that he would have money and drugs. On October 26, 2015, Thomas went [to] the home of his cousin Sears to retrieve his rifle and asked Sears to procure an additional firearm. Jackson recruited O'Neil Bruin and Cory Cain to participate in the robbery.

Later[,] on October 26, 2015, Bruin, Jackson, Thomas, and Sears exited their vehicle at 711 West Virginia Street, while Cain, the driver, stayed behind. The quartet entered the building and went upstairs, and three of them entered Apartment A with masks on and guns drawn. Orth, Herbert, Emily Todisco, Leah Walker, Colton Claybrooks, Kaylee Rocca, Brayden Scott, and three of Herbert's friends were smoking marijuana in Apartment A at the time. Sears threw a bag on the table and demanded that everyone in the room fill it with their valuables. Orth managed to retrieve his handgun from under a couch and attempted to fire it twice at the intruders, but it misfired. Sears shot Orth in the throat and chest.

Meanwhile, Cameron Kendall was helping his brother, who lived in Apartment B, move out that evening. Kendall happened to have a concealed-carry permit and was armed. Kendall's brother was loading items into a vehicle when Kendall heard shots, and he decided to check on his brother. As soon as Kendall opened the door to Apartment B, Sears shot him in the abdomen. Kendall returned fire until he ran out of ammunition, shooting Bruin in the right leg and left shoulder, Thomas in the hip, and Sears in the chest and back.

The State ultimately proceeded to jury trial on charges of two counts of Level 1 felony burglary resulting in serious bodily injury where Orth and Kendall were the victims; Level 2 felony attempted robbery resulting in serious bodily injury where Orth was the victim; four counts of Level 3 felony attempted robbery threatening to use force while armed where Herbert, Todisco, Walker, and Claybrooks were the victims; and two counts of Level 3 felony aggravated battery where Orth and Kendall were the victims. The jury found Sears guilty as charged. The trial court entered judgment of conviction on all of the jury's verdicts but did not impose sentences for Level 2 felony attempted robbery or the two counts of Level 3 felony aggravated battery due to double jeopardy concerns. The trial court sentenced Sears to thirty years of incarceration for each of the Level 1 felony burglary convictions, to be served consecutively, and nine years for each of the Level 3 felony attempted robbery convictions, to be served concurrent with each other but consecutive to the burglary sentences, for an aggregate sentence of sixty-nine years.

*Id.* at *1-2. Sears was nineteen years old at the time the crimes were committed.

[3] On direct appeal, Sears's appellate counsel raised three issues: (1) his two convictions for Level 1 felony burglary violated prohibitions against double jeopardy, (2) his convictions for Level 2 felony attempted robbery and Level 3 felony aggravated battery violated common-law prohibitions against multiple punishment for the same harm, and (3) his sixty-nine-year sentence was inappropriate. *Id.* at *1. A panel of this court affirmed in part, reversed in part, and remanded with instructions to "(1) vacate Sears's Level 1 felony burglary conviction . . . , (2) vacate his two convictions for Level 3 felony aggravated battery, and (3) resentence him. *Id.* at *4. We chose not to review Sears's sentence for appropriateness, finding the issue premature.

[4]     On February 14, 2019, the trial court vacated one of Sears's burglary convictions and both of his aggravated battery convictions. The trial court subsequently resentenced Sears to thirty years on the remaining burglary conviction, twenty years on the Level 2 attempted robbery conviction, and nine years for each of his four convictions for Level 3 attempted robbery. The Level 3 sentences were ordered to be served concurrent with each other but consecutive to the burglary and Level 2 attempted robbery sentences. Sears received an aggregate sentence of fifty-nine years executed at the DOC. Sears now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Inappropriate Sentence

[5]     Sears argues his sentence is inappropriate in light of the nature of his offenses and his character. Sears contends that his sentence is an "outlier that this Court should remedy." Appellant's Reply Brief at 7. He asks this court to revise his sentence "to a term of years consistent with that of his [codefendants] and other[s] who commit these types of crimes." *Id.*

[6]     At his original sentencing hearing, the trial court found as follows regarding aggravating and mitigating circumstances:

> The most significant aggravating circumstance here is the nature and circumstances of the offense. This is a shocking level of violence for a civilized society. Besides yourself Mr. Sears, four other human beings were shot with guns, just abhorrent. That can't – civilized society cannot tolerate that kind of behavior.

> Four other human beings besides yourself were shot [and] at least three of them were seriously injured, could have had serious and significant risks of death to at least two of them and at least one of them still suffers from permanent – apparently permanent injuries as a result of what happened. A shoot[-]out in a city in a residential setting is just, is just shocking to common sensibilities and morality and decency. There were six different victims here. Two of them that were seriously injured, two of your confederates were shot besides yourself. There were handguns and weapons that had been deliberately procured and deliberately made a part of this, this scheme. That's the aggravating circumstance that outweighs everything else in the, in the case. It was a deliberate plan to arm yourselves and do whatever it takes, use whatever amount of force was necessary to get some marijuana and some money and, and as a result, four, five people, I include you in this, were hurt pretty bad.

[Prior Case] Transcript of Evidence, Volume 4 at 153-54. The trial court sentenced Sears to thirty years for each of the Level 1 felony burglary convictions, to be served consecutively, and nine years for each of the Level 3 felony attempted robbery convictions, to be served concurrent with each other but consecutive to the burglary sentences, for an aggregate sentence of sixty-nine years. The trial court determined that consecutive sentences were warranted because of the "aggravating nature and circumstances of the offenses[,]" and because "each victim deserve[d] their own sentence." *Id.* at 154.

[7] On remand, the trial court resentenced Sears to an aggregate sentence of fifty-nine years, specifically:

Count two, the burglary a [L]evel one felony be thirty years in the Indiana Department of Corrections. Count 5, the robbery a [L]evel two will be twenty years in the Indiana Department of Corrections those sentences will be served consecutively and the remanding [sic] counts, seven, eight, nine and ten[, all Level 3 felonies,] will all be nine years executed. Those are all the presumptive [sic] sentences in this cases [sic]. Those will be concurrent to each other, but consecutive to counts two and counts five for a total sentence of fifty-nine years. That sentence will be executed.

[Remand] Transcript of Evidence, Volume 2 at 6. The trial court did not discuss any additional mitigating or aggravating circumstances, apparently relying upon those set forth at Sears's original sentencing.

# II. Standard of Review

[8] We may review and revise criminal sentences pursuant to the authority derived from Article 7, Section 6 of the Indiana Constitution. Indiana Appellate Rule 7(B) empowers us to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because a trial court's judgment "should receive considerable deference[,]" our principal role is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden to persuade this court that his or her sentence is inappropriate, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors appearing in the record for such a

determination, *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011), *trans. denied*.

*Reis v. State*, 88 N.E.3d 1099, 1101-02 (Ind. Ct. App. 2017). The question under Appellate Rule 7(B) analysis is "not whether another sentence is *more* appropriate" but rather "whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Whether a sentence is inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Generally, multiple victims justify the imposition of enhanced and consecutive sentences. *Tyler v. State*, 903 N.E.2d 463, 468 (Ind. 2009). Although we need not compare the sentences of codefendants, we are not precluded from comparing sentences among those convicted of the same or similar crimes. *Knight v. State*, 930 N.E.2d 20, 22 (Ind. 2010).

[9] We begin with the advisory sentence in determining the appropriateness of a sentence. *Childress*, 848 N.E.2d at 1081. Since the advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence. *Golden v. State*, 862 N.E.2d 1212, 1216 (Ind. Ct. App. 2007), *trans. denied*. The advisory sentence for a Level 1 felony is thirty years, with a minimum sentence of twenty years and a maximum sentence of forty years. Ind. Code § 35-50-2-4(b). The sentencing range for a Level 2 felony is "a

fixed term of between ten (10) and thirty (30) years, with the advisory sentence being seventeen and one-half (17½) years." Ind. Code § 35-50-2-4.5. A Level 3 felony carries a sentencing range of three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). Sears was sentenced to the advisory sentence for the Level 1 and Level 3 felonies. For the Level 2 felony, his sentence was only two and one-half years longer than the advisory sentence but twelve and one-half years shorter than the maximum sentence.

## III. Nature of the Offenses

[10] Sears does not attempt to mitigate the seriousness of his offenses, which are egregious. He argues, however, that the nature of the offenses does not warrant a fifty-nine-year sentence because he did not shoot until he was shot at, and his attempts to retreat were met with an individual using deadly force. We disagree.

[11] Evidence presented at trial indicated that Sears knew of his codefendants' plan to rob a drug dealer and that Sears was a willing participant. Prior to arriving at the scene of the crime, Sears armed himself with a .45 caliber semi-automatic handgun. Evidence was presented that Sears had an opportunity to call-off the robbery but chose to proceed.

[12] Video surveillance footage showed that Sears led his group of codefendants into the apartment building, up the stairs, and to the apartment where Orth conducted his business. Once inside the apartment, Sears pointed a loaded handgun at the ten occupants of the apartment, putting them in fear for their

lives, then threw a backpack on the table and demanded that they place their valuables into the bag. The fact that Orth tried to thwart the robbery, by pulling out his firearm and attempting to shoot Sears, does not attenuate the egregiousness of Sears's next act, that is, firing his handgun multiple times in a confined area, first wounding Orth, then, minutes later, wounding Kendall—an innocent bystander. Orth was shot in the throat and chest. He testified that the gunshots "blew out my [main] artery in my shoulder[,] which is the main one that pumps through the top of your body." [Prior Case] Tr., Vol. 3 at 125. His injuries could have proved fatal had he waited for an ambulance rather than being transported to the hospital by friends. Kendall was shot in the abdomen and testified that as a result of the shooting, his right leg is "still half[-]way numb[;]" he had to have two feet of his intestines removed; and he suffers from a slipped disc in his lower back. [Prior Case] Tr., Vol. 4 at 42. Given the nature of the offenses, we find that Sears's sentence is not inappropriate.

[13] Sears also contends that his sentence is inappropriate because he is no more or less culpable than his codefendants, Marquell Jackson, O'Neil Bruin, and Diego Thomas, yet he "is serving twenty-four years more than any other person who was involved [in the] crime." Appellant's Brief at 12. According to Sears,

> when three other individuals all involved in the same crime have received significantly lighter sentences, it seems clear that this Court must provide some balance between the punishment Sears received and those received by his [codefendants], especially since there is no evidence to suggest that Sears was the ringleader or had more culpability than any other [codefendant].

*Id.* at 13.  Sears argues that his sentence should, therefore, be in a range similar to his codefendants.[1]  Sears also invites this court to "look at [his] sentence against the scope of all sentences, rather than just comparing his sentence to that of his codefendants[;]" and, for guidance, "look at statutory guides for offenses where consecutive sentences are given[,]" as the "legislature has capped consecutive sentences in some instances."  *Id.*

[14]  Even if we do compare sentences, which we are not required to do, we find that Sears's aggregate sentence is appropriately longer than his codefendants.  While Sears testified at trial that he did not know that the codefendants were planning to rob Orth and that his only plan that day was to purchase $1,000.00 worth of marijuana, additional evidence was presented that Sears's involvement in the robbery stemmed from his willingness to provide a gun for the heist.  When Sears and his codefendants arrived at the apartment building, Sears served as a scout and surveilled the scene of the impending robbery.  He then led his group of codefendants into the apartment building, up the stairs, and to the apartment where Orth conducted his business.  Once inside the apartment, Sears pointed a

---

[1] Jackson is serving thirty-five years for his role in the crime after an appeal and being resentenced by the Vanderburgh Circuit Court.  *See* mycase.IN.gov, *State v. Jackson*, Cause No. 82C01-1510-F1-6686, https://public.courts.in.gov/mycase/#/vw/Search (last accessed July 17, 2019).  Bruin was sentenced to twenty years.  *See* mycase.IN.gov, *State v. Bruin*, 82C01-1510-F1-6636, https://public.courts.in.gov/mycase/#/vw/Search (last accessed July 17, 2019).  Thomas was sentenced to fifteen years, with the first forty-two months executed and the balance suspended on the condition that he complete a drug abuse probation services program.  *See* mycase.IN.gov, *State v. Thomas*, Cause No. 82D03-1510-F1-6634, https://public.courts.in.gov/mycase/#/vw/ Search (last accessed July 17, 2019).  Codefendant Corey Cain, the getaway driver, is serving six years.  *See* mycase.IN.gov, *State v. Cain*, Cause No. 82D03-1510-F1-6676, https://public.courts.in.gov/mycase/#/vw/Search (last accessed July 17, 2019).  Thomas and Bruin testified in Sears's trial and pleaded guilty to their roles in the crime.

loaded handgun at the ten occupants of the apartment and attempted to rob them. Sears fired the handgun multiple times, first wounding Orth then, minutes later, wounding Kendall—an innocent bystander. Both Orth and Kendall were critically wounded.

[15]     Even if the exchange of gunfire was completely unexpected, this does not change the fact that Sears participated in a robbery in which he provided the gun, brandished the gun, and ultimately fired the gun—critically wounding two individuals. Given the circumstances of Sears's involvement in the crime, the fact that Sears received a longer sentence than his codefendants received does not support his claim that his sentence is an "outlier" and, therefore, inappropriate.

## IV. Character of the Offender

[16]     As to his character, Sears argues that he has no prior adult criminal history; he has not previously served a long-term executed sentence; he was categorized as having a moderate risk to reoffend on the Indiana Risk Assessment tool; this is his first felony conviction; he is the youngest of his codefendants and "was not thought to be the ringleader" of the heist; he has a child;[2] and he held jobs after

---

[2] The child that Sears claims to have is actually his girlfriend's child. At sentencing, Sears's counsel clarified Sears's relationship with the child as follows: "This young man talked about that kid as his child but stated to me no, that's not my kid[,] . . . so we deliberately set out to correct that[.] . . . [W]e never set out to deliberately claim this [child] as a dependent." [Prior Case] Tr., Vol. 4 at 153.

his high school graduation. *Id.* at 17. We are unpersuaded that Sears's character warrants a reduction of his sentence.

[17] Sears has no prior adult criminal history, however, he has a history of juvenile adjudications, including adjudications for what would have been burglary (in 2009), theft (2009 and 2012), and trespass and false informing (2012) if committed by an adult. He was placed on probation, but was twice unsatisfactorily released from probation. Since the age of seventeen, he has used marijuana daily, and at the time of his arrest, he was smoking approximately three to four grams of marijuana each day.

[18] While the State agreed that Sears's age (nineteen years old) at the time he committed the crimes was a mitigating circumstance, the State argued, and we agree, that it was not a significant mitigator. Our supreme court has held that a young age does not "automatically" qualify as a significant mitigator. *Gross v. State*, 769 N.E.2d 1136, 1141 n.4 (Ind. 2002). In fact, it "is neither a statutory nor a per se mitigating factor. There are cunning children and there are naïve adults." *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind. 1999). Accordingly, when a defendant is in his teens or early twenties, chronological age is only the starting point. *Monegan v. State*, 756 N.E.2d 499, 504 (Ind. 2001). What really must be determined is whether the young offender is "clueless" or "hardened and purposeful." *Id.*

[19] Sears was not "clueless" when he armed himself and willingly participated in the robbery. As the State noted, Sears was not fifteen or sixteen years old when

he committed the crimes. He was nineteen, and as the State pointed out at sentencing, he is "mature, lives on his own and holds two jobs, [and] gets good grades[,]" and should have appreciated that robbing individuals at gunpoint carries consequences. [Prior] Tr., Vol. 4 at 150. Sears's contacts with the juvenile justice system, his inability to complete probation, his disregard for the law, and his willing participation in a robbery that, due to his decision to arm himself, escalated to a shocking level of violence reveals character that does not merit sentence revision under Appellate Rule 7(B).

[20] Under these facts and circumstances, we cannot conclude that Sears's fifty-nine-year sentence is inappropriate in light of the nature of his offenses and his character. We decline to revise it under Appellate Rule 7(B).

# Conclusion

[21] In conclusion, Sears's sentence is not inappropriate given the nature of the offenses and his character.

[22] Affirmed.

Baker, J., and Najam, J., concur.