## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2019, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Spicer,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 23, 2019<br><br>Court of Appeals Case No.<br>19A-CR-434<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Stanley E. Kroh,<br>Magistrate<br><br>Trial Court Cause No.<br>49G03-1807-FB-23188 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a jury trial, Thomas Spicer was found guilty of one count of Class B felony child molesting.[1]  The trial court sentenced him to ten years executed in the Indiana Department of Correction ("DOC") with three years suspended to probation.  Spicer now appeals, raising two issues for our review, which we restate as: (1) whether the trial court denied him the right to allocution before the imposition of his sentence; and (2) whether his sentence is inappropriate in light of the nature of the offense and his character.  Concluding that Spicer was not denied his right to allocution, and the sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2]     The victim, K.L.-J., and Spicer are cousins.  K.L.-J. was born on December 31, 2004.  Spicer is eleven years older than K.L.-J.  At the time the current events unfolded, Spicer lived with his great aunt, Toni White.  On the occasions that K.L.-J. visited the house where Spicer lived, she and Spicer would play video games together.

[3]     Sometime between February and December 2012, when K.L.-J. was seven or eight years old and Spicer was eighteen or nineteen years old, K.L.-J. was visiting at White's house.  Spicer was in a back room of the house, and K.L.-J.

---

[1] Ind. Code § 35-42-4-3(a) (2007).

was in the kitchen. Spicer asked K.L.-J. to come to the back room, and K.L.-J., thinking that she and Spicer would play video games, complied. However, K.L.-J. recalled that once inside the room, Spicer pushed her "[a]ggressively" toward a bed such that K.L.-J. ended up in a seated position on the bed. Transcript, Volume 2 at 21. Spicer pulled his pants down, and then he pulled down K.L.-J.'s pants and subjected her to vaginal intercourse. K.L.-J. recalled the feeling of Spicer "[p]iercing" her vagina as he moved, and that she felt bad and uncomfortable during the attack. *Id.* at 22. K.L.-J. did not fully understand what Spicer had done to her. She did not tell her family about the incident because she was afraid of what would happen if she did.

[4]     At the time of the attack, K.L.-J. had a male childhood friend, U.D. K.L.-J. and U.D. later became girlfriend and boyfriend in what K.L.-J.'s mother, T.L.-J., referred to in her testimony as a "puppy love" relationship. *Id.* at 48. In April 2018, K.L.-J. told U.D. that when she was seven years old, Spicer raped her. K.L.-J. knew that she was around seven years old when the incident occurred because at that time, she "always used to wear . . . pigtails in [her] hair[.]" *Id.* at 18. U.D. told his own mother what K.L.-J. told him about the attack. U.D.'s mother then contacted T.L.-J.

[5]     U.D. and U.D.'s mother travelled to K.L.-J.'s home, met with K.L.-J. and T.L.-J., and disclosed to T.L.-J. what Spicer had done to K.L.-J. The police were notified, and an investigation was conducted.

[6] Spicer was eventually charged with one count of child molesting as a Class B felony. Following a jury trial held on January 17, 2019, Spicer was found guilty as charged.

[7] A sentencing hearing was held on January 29, 2019. At the hearing, the State called T.L.-J., and she testified regarding how Spicer's crime has affected K.L.-J.'s life. When the State was finished, the trial court said, "Turn to the Defense, then." *Id.* at 86. Spicer's mother and father then testified on Spicer's behalf. At the conclusion of their testimony, the trial court asked Spicer's counsel if the defense had further evidence, and Spicer's counsel said, "Briefly, Your Honor. Mr. [Spicer] would like to briefly address the Court." *Id.* at 95. The trial court then administered the oath to Spicer.

[8] On direct examination by his counsel, Spicer testified that he was not living in the residence where the molestation occurred. He also testified, "I would never do anything to" the victim, and, "I'm really sorry that it happened to her, but I know I'm innocent for [sic] this case." *Id.* Spicer then testified about his future educational and career plans. On cross-examination, Spicer was questioned regarding his prior juvenile adjudication for what would have been Class C felony child molesting if committed by an adult—as well as the sex-offender evaluation and treatment he underwent because of it.

[9] When the cross-examination was concluded, the State and Spicer's counsel presented sentencing arguments, after which the trial court addressed Spicer directly, as follows:

> [COURT]: . . . And, Mr. Spicer, you're not required to say anything else, but I'm required to ask you is there anything else you'd like to say here this afternoon?
>
> [SPICER]: Again, I do apologize, if that really happened to K.L[.]-J.  But I am innocent for [sic] this case, and I would never do anything to K.L[.]-J.
>
> [COURT]: Thank you.

*Id.* at 101.

[10] The trial court sentenced Spicer to a term of ten years executed in the DOC with three years suspended to probation.  Spicer now appeals.  Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Allocution

[11] Spicer argues that the trial court committed fundamental error when it failed to advise him of his right to allocution and allowed the State to cross-examine him when he testified at his sentencing hearing.  According to Spicer, "[t]hrough the improper cross-examination, the prosecution was able to attack and undermine the statement [Spicer] gave and to present evidence that was entirely improper and inconsistent with the exercise of the right of allocution."  Brief of Appellant at 7.  The State counters that no error occurred because the trial court

"expressly gave Spicer the opportunity to allocute[,]" and "Spicer allocuted." Brief of Appellee at 9.

## A. Standard of Review

Spicer did not object during sentencing but now claims that the trial court committed fundamental error. "An error is fundamental, and thus reviewable despite failure to object, if it 'made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm.'" *Young v. State*, 30 N.E.3d 719, 726 (Ind. 2015) (quoting *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015)). Fundamental error is a "a daunting standard," applicable only in egregious circumstances. *Knapp*, 9 N.E.3d at 1281. The exception is extremely narrow, and reaches only errors that are so blatant that the trial judge should have taken action sua sponte. *Id.*

## B. Nature of Right to Allocution

"A defendant's right to offer a statement on his or her behalf before the trial court pronounces sentence is known as the right of allocution." *Woods v. State*, 98 N.E.3d 656, 661 (Ind. Ct. App. 2018), *trans. denied*. The right of allocution is rooted in the common law. *Biddinger v. State*, 868 N.E.2d 407, 410 (Ind. 2007). In Indiana, that right has been preserved by our state's allocution statute, which provides:

> When the defendant appears for sentencing, the court shall inform the defendant of the verdict of the jury or the finding of

the court. The court shall afford counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement. Sentence shall then be pronounced, unless a sufficient cause is alleged or appears to the court for delay in sentencing.

Ind. Code § 35-38-1-5 (2010). The purpose of the right of allocution is satisfied "[w]hen the defendant is given the opportunity to explain his view of the facts and circumstances[.]" *Vicory v. State*, 802 N.E.2d 426, 430 (Ind. 2004). On appeal, "a defendant claiming that he was denied his right to allocution carries a strong burden in establishing his claim." *Id.* at 429.

[14] Here, the record reveals that Spicer willingly testified at his sentencing hearing. After he testified, and after counsel presented closing sentencing arguments, the trial court personally asked Spicer if he wanted to make a statement prior to pronouncement of the sentence, and Spicer then provided a brief statement explaining his view of the facts. Spicer was not denied his right to allocution. Accordingly, we find no error.

# II. Inappropriate Sentence

[15] Spicer next argues his sentence is inappropriate in light of the nature of his offense and his character. He acknowledges that he received the advisory sentence for the crime and that the sentence was partially suspended but maintains that "there is nothing in the record to indicate that the minimum sentence was not appropriate." Br. of Appellant at 8. He asks this court to

revise his sentence "to one appropriate for an impulsive act by an immature young man who has since lived in a law-abiding fashion." *Id.*

[16]    At sentencing, the trial court found as follows regarding aggravating and mitigating circumstances:

> The Court, Mr. Spicer, has listened carefully to the evidence and argument. The Court's also reviewed the Presentence Report.
>
> The Court recognizes the mitigating circumstance that [defense counsel] has brought up on your behalf. You're very young. You're 25 years old.
>
> That – the Court does consider that a prolonged incarceration could be an undue hardship to – I mean, it's – the statutory mitigator is to dependents, but the Court recognizes that a prolonged incarceration would be an undue hardship to your family. In particular, the – what the Court's heard from your mother, who she's – you know, depends on you.
>
> I understand you're remorseful that if something – as you say, if something happened to K.L[.]-J. But I don't know that the Court can recognize that as a statutory mitigator the way it's been framed.
>
> The Court has recognized the mitigators that [defense counsel] has talked of in her argument as well.
>
> On the other side of the equation is the prior attempt at rehabilitation in the juvenile system does concern the Court. Although I have to recognize that in the page 5 of the Presentence Report it states that the – and please, Lawyers,

correct me if you think I'm interpreting this incorrectly. But it says the original referral was at age 16 [for what would have been Class C felony child molesting had it been committed by an adult], meaning when Mr. Spicer was 16 years old, but then the adjudication was not until he was 19 years old. So – . . . it appears the case was in juvenile court for around three years, and then the adjudication was when Mr. Spicer was 19.

And then this – the [instant] accusations, and now the conviction, is based on events that occurred between February 1, 2012 and December 13, 2012. So[,] I think, as [the State] said, these events occurred very close in time. So[,] I don't know that the Court can really recognize that as an aggravator because things were so close in time.

We're very used to looking at things that way when there are prior true findings or prior convictions. But this situation is a little unusual in that it's – it's a delayed disclosure. And the – it's difficult to tell the exact timing, but it appears to the Court that both the true finding [in the juvenile case] and the acts that resulted in your [instant] conviction were very near to the same time span. So[,] I said a minute ago this Court was looking at this as an aggravator, but I don't believe the Court can do that.

I've just expressed concern that – of your childhood. And I know you have expressed that you were sexually abused as – as a child. The Court's considered that as well.

*****

[T]his is a serious offense, a Class B felony. The advisory sentence is ten years. The sentence can . . . go down to six years, which is the minimum, if there are mitigating circumstances. It could go up to 20 years, which is the maximum sentence, if there are aggravating circumstances.

And in this case, the Court believes the advisory sentence is the correct total sentence. So[,] the Court does enter a total sentence of ten years. The Court believes that seven years should be executed at the Indiana Department of Correction and then three years suspended, and that those three years be served on probation . . . .

Tr., Vol. 2 at 102-04.

## A. Standard of Review

We may review and revise criminal sentences pursuant to the authority derived from Article 7, Section 6 of the Indiana Constitution. Indiana Appellate Rule 7(B) empowers us to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because a trial court's judgment "should receive considerable deference[,]" our principal role is to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden to persuade this court that his or her sentence is inappropriate, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors appearing in the record for such a determination, *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011), *trans. denied*.

*Reis v. State*, 88 N.E.3d 1099, 1101-02 (Ind. Ct. App. 2017). The question under Appellate Rule 7(B) analysis is "not whether another sentence is *more* appropriate" but rather "whether the sentence imposed is inappropriate." *King*

*v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).  Whether a sentence is inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  *Cardwell*, 895 N.E.2d at 1224.

[18]  We begin with the advisory sentence in determining the appropriateness of a sentence.  *Childress*, 848 N.E.2d at 1081.  Since the advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence.  *Golden v. State*, 862 N.E.2d 1212, 1216 (Ind. Ct. App. 2007), *trans. denied*.  The advisory sentence for a Class B felony is ten years, with a minimum sentence of six years and a maximum sentence of twenty years.  Ind. Code § 35-50-2-5 (2005).  Spicer received the advisory sentence.

## B. Nature of the Offenses

[19]  Spicer does not attempt to mitigate the seriousness of his offense.  He argues, however, that "the minimum sentence would be appropriate here" because this was an "isolated incident, there being no indication that anything similar had occurred with this young relative before or that it ever occurred thereafter[; t]he victim said it happened one time[; and it] was a stupid, impulsive act by a young, immature boy."  Br. of Appellant at 16 (internal citation omitted).  We disagree.

[20] Whether the incident was "isolated" does not lessen the seriousness of the offense. Spicer, who was eighteen or nineteen years old at the time, lured his seven-year-old cousin into a back room and vaginally raped her. Nothing about the nature of the offense warrants a reduction in Spicer's advisory sentence.

## C. Character of the Offender

[21] As to his character, Spicer argues that he has no prior adult criminal history; he was "barely eighteen-years-old at the time the offense occurred"; he has not committed any offenses since the attack on K.L.-J.; he has attended college and has plans to complete his college education; and he has been employed. *Id.* at 18. We are unpersuaded that Spicer's character warrants a reduction of his sentence.

[22] Spicer's involvement with the justice system began in 2005, when, as a juvenile, he was alleged to have committed an act that would have been Class D felony theft if committed by an adult. As part of the disposition in that case, Spicer was given a diversion contract, and he completed community service work.

[23] Spicer's next brush with the juvenile justice system is of particular note, as it establishes that the instant offense is not the first time Spicer committed an act of child molesting. In July 2010, when Spicer was sixteen years old, he committed what would have been Class C felony child molesting if committed by an adult. The juvenile court made a true finding, and the resulting case was disposed of in July 2013 when Spicer was nineteen years old. Spicer received sex-offender evaluation/counseling, which he completed in September 2013.

He was also placed on formal probation, which he completed in that same month.

[24] Regarding the seriousness of his act against K.L.-J., Spicer's testimony at his sentencing hearing indicates that he does not fully comprehend why his act was harmful to her. For example, when Spicer was cross-examined by the State regarding the juvenile true finding for child molesting, Spicer testified that he had taken responsibility for that act but stated: "[W]e were just kids when it happened. It wasn't really rape or anything like that. . . . I was ten years old when it all happened. And . . . the victim did apologize to my mother and my sisters for that false allegation that it was forced." Tr., Vol. 2 at 97.

[25] Regarding Spicer's age, the trial court agreed that his young age was a mitigating circumstance. However, our supreme court has held that a young age does not "automatically" qualify as a significant mitigator. *Gross v. State*, 769 N.E.2d 1136, 1141 n.4 (Ind. 2002). In fact, it "is neither a statutory nor a per se mitigating factor. There are cunning children and there are naïve adults." *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind. 1999). Accordingly, when a defendant is in his teens or early twenties, chronological age is only the starting point. *Monegan v. State*, 756 N.E.2d 499, 504 (Ind. 2001). What really must be determined is whether the young offender is "clueless" or "hardened and purposeful." *Id.*

[26] Spicer was at least eighteen years old when he took advantage of the trust he had built with K.L.-J., lured her into a back room, and attacked and raped her.

He was within a year of graduating from high school when he committed the offense. This was the second time Spicer committed an act of child molesting. And, as the trial court noted, it appears that the actions that led to the true finding in the juvenile case and the actions that resulted in Spicer's instant conviction took place "very near to the same time span." Tr., Vol. 2 at 103. Spicer's character does not merit sentence revision under Appellate Rule 7(B).

[27] Based on the facts and circumstances of this case, we cannot conclude that Spicer's ten-year sentence is inappropriate in light of the nature of his offense and his character. We decline to revise it under Appellate Rule 7(B).

# Conclusion

[28] In conclusion, Spicer was not denied his right to allocution and his sentence is not inappropriate given the nature of the offense and his character.

[29] Affirmed.

Mathias, J., and Pyle, J., concur.